1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

KURT BENSHOOF,

CASE NO. 2:23-cv-1392

8
Plaintiff,

ORDER DISMISSING PLAINTIFFS'
FIRST AMENDED COMPLAINT
WITH PREJUDICE

9
v.

10
MOSHE ADMON et al,

11
Defendant.

12

13

## 1. INTRODUCTION

14

Pro se Plaintiffs Kurt Benshoof and Briana D. Gage's First Amended

15
Complaint is sprawling in scope—it spans 184 pages, names over 30 defendants,

16
and asserts nearly 40 causes of action, covering family law issues, Constitutional

17
claims, conspiracy theories, and COVID-19 policies. *See generally* Dkt. No. 47.

18
Defendants City of Seattle, Nathan Cliber, Zachary Cook, Freya Brier, Puget

19
Consumer Co-Op (PCC), Seattle Public Schools, Blair Russ, Justin Booker, Central

20
CoOp, and Hon. David Keenan move to dismiss Plaintiffs' claims, and several other

21

22

23

Defendants join their requests.[1] Dkt Nos. 55, 57, 172, 185, 209, 215, 218, and 221. Their motions all argue the same thing, albeit from different angles: Plaintiffs' claims are legally untenable.

The question, then, for this Court is whether Plaintiffs state a claim upon which relief may be granted. They do not. It is clear from Plaintiffs' many long-winded filings that they feel aggrieved by many actors, but through it all, they fail to allege cognizable legal theories or factual assertions that show a facially plausible claim for relief. Under these circumstances, the Court has an independent duty—not just prompted by Defendants' pending motions—to dismiss Plaintiffs' complaint for want of legal sufficiency. *See* 28 U.S.C. § 1915(e)(2)(i)–(iii).

Accordingly, the Court DISMISSES Plaintiffs' first amended complaint with prejudice.

## 2. BACKGROUND

Benshoof's original complaint was plagued by "'prolixity,' argumentativeness, redundancy, and [was] often plain confusing [in] nature." Dkt. No. 38 at 12. The Court ordered him to replead his complaint to provide a short, plain, and concise statement of his claims. *Id.* at 12-13. Benshoof amended his complaint, adding Gage

---

[1] Defendants Durkan, Lentz, Outland, Sullivan, Ladd, Wallace, Lynch, Gregory, Chess, Roache, Eisenberg, Crawford-Willis, Davidson, Sarrafan, and Coomer all join the City of Seattle's motion. Dkt. Nos. 98, 117, 141, 148, 161, 176. Big 5 Sporting Goods also join the City of Seattle's motion, Dkt. No. 55, PCC, Brier, and Cook's motion, Dkt. No. 172, and Seattle Public Schools' motion, Dkt. No. 185. Dkt. No. 190.

ORDER DISMISSING PLAINTIFFS' FIRST AMENDED COMPLAINT WITH PREJUDICE - 2

as a plaintiff,[2] but the First Amended Complaint is plagued by the same defects. Dkt. No. 47. Indeed, it remains hard to make out the precise contours of Plaintiffs' claims through the irrelevant, conclusory, and confusing details. However, no matter how inartfully pled the First Amended Complaint may be, the Court must liberally construe Plaintiffs' claims so as to do justice. *Entler v. Gregoire*, 872 F.3d 1031, 1038 (9th Cir. 2017) ("A pro se complaint must be 'liberally construed,' since 'a pro se complaint, however clumsily pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'") (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)); *see* Fed. R. Civ. Proc. 8(e) ("Pleadings must be construed so as to do justice").

The facts below are from the First Amended Complaint.

## 2.1   Family law and related allegations.

Part of the First Amended Complaint involves a family law dispute between Benshoof and Defendant Jessica Owen. Benshoof and Owen are the parents of A.R.W. Dkt. No. 47 ¶ 377. According to Benshoof, they had an agreement to jointly raise A.R.W., but in 2020, Owen moved out of their shared home and began living

---

[2] Gage's name and physical signature appear on the First Amended Complaint. But save for her electronic filing registration, neither her name nor signature have appeared since on Plaintiffs' court filings, which now number in double digits. *See generally* Dkt. This is true despite Rule 11's requirement that "[e]very pleading, written motion, and other paper . . . must be signed . . . by a party personally if the party is unrepresented." Fed. R. Civ. P. 11(a). The Court is concerned that Gage has allowed Benshoof to represent her interests in this action. Benshoof, however, as a non-attorney pro se litigant may not represent other individuals in federal court. *Johns v. Cnty. of San Diego*, 114 F.3d 874, 876 (9th Cir. 1997). The Court makes no finding at this time whether Benshoof has engaged in the unauthorized practice of law but warns him that it is unlawful to do so in Washington. *See* RCW 2.48.180.

with Defendant Magalie Lerman. *Id.* ¶¶ 378, 381. Benshoof's relationship with Owen deteriorated soon after. *Id.* ¶ 383.

In 2021, represented by attorney Defendant Nathan Cliber, Owen filed a parentage action in King County Superior Court, Case No. 21-5-00680-6 SEA. *Id.* ¶ 403. During the proceedings, Defendant Amy Franklin-Bihary served as *guardian ad litem* for A.R.W. *Id.* ¶ 436. Later, in August 2021, King County Superior Court issued a temporary order for protection, restraining Benshoof from contacting A.R.W. Dkt. No. 13-1 at 79; *see also Owen v. Benshoof*, Case No. 21-2-11149-8 (King Cnty. Sup. Ct. Aug. 23, 2021).

On September 3, 2021, a court commissioner lifted the protection order with a "denial order." *Owen v. Benshoof*, Case No. 21-2-11149-8, King Cnty. Sup. Ct. Aug. 23, 2021. That same day, Benshoof alleges that Owen, Lerman, and their friend Defendant Owen Hermsen, conspired to steal Benshoof's FJ Cruiser SUV and to prevent him from sharing custody of A.R.W. Dkt. No. 47 ¶¶ 396, 400. At some point, Seattle Police Department ("SPD") officers, including Defendant Gabriel Ladd, arrested Benshoof even though Benshoof showed them a copy of the denial order. *Id.* ¶¶ 396, 398.

On October 21, 2022, King County Superior Court Judge David Keenan issued a final parentage order naming Owen "the sole residential and custodial parent of A.R.W." with "sole decision-making authority as to *any and all* issues (e.g.,

1   education, medical care, international travel, etc.) having to do with the child." Dkt.

2   No. 13-1 at 448, 452 (emphasis in original).[3]

3       Over the next couple years, Benshoof filed lawsuits in superior court against

4   Owen, Lerman, Hermsen, and Cliber. Represented by attorneys Defendants Moshe

5   Admon and Blair Russ, Owen, Lerman, Hermsen, and Cliber moved to classify

6   Benshoof as a vexatious litigant. King County Superior Court Judge Marshall

7   Ferguson issued an Order Restricting Abusive Litigation of Kurt Benshoof, which

8   placed conditions on any future efforts by Benshoof to sue Owen, Lerman, Hermsen,

9   and Cliber.[4] Without commenting on the propriety of a state court prohibiting an

10  individual from filing an action in federal court, there is no indication in the record

11  that Benshoof complied with Judge Ferguson's order by seeking leave to proceed

12  with this action before suing Owen, Lerman, Hermsen, and Cliber.

13      The conflict continues and on January 23, 2023, Owen called 911 to have

14  Benshoof arrested for violating the parentage order because A.R.W. walked to

---

[3] "In reviewing the sufficiency of a complaint, we limit ourselves to the complaint itself and its attached exhibits, documents incorporated by reference, and matters properly subject to judicial notice." *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1051 (9th Cir. 2014).

[4] Under Rule 201(b), courts may take judicial notice of a fact that is not subject to reasonable dispute because it "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201(b)(2). Judicial notice may be taken "of court filings and other matters of public record." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). The Court takes judicial notice of *Benshoof v. Cliber et al.*, Case No. 22-2-15958-8 (King Cnty. Sup. Ct. February 17, 2023), Dkt. No. 177, Order Restricting Abusive Litigation of Kurt Benshoof; *see also* Dkt. No. 13-2 at 111-117.

ORDER DISMISSING PLAINTIFFS' FIRST AMENDED COMPLAINT WITH PREJUDICE - 5

Benshoof's house. Dkt. No. 47 ¶ 452. SPD officers, including Defendant Jordan Wallace, responded to the call. The matter ended when A.R.W. left Benshoof's house. *Id.* ¶¶ 453, 456.

### 2.2 Allegations involving Covid-19 policies and Benshoof's related arrests.

Unrelated to his family law concerns, Benshoof makes claims about his refusal to comply with various face-mask policies during the COVID-19 pandemic in 2020 and 2021. Benshoof argues that policies requiring members of the public to wear face masks violated his religious beliefs. Benshoof says, "[t]he Breath of Life is sacred: it shall not be restricted nor impeded by coercion" and he is "spiritually proscribed from being coerced or forced to wear a face mask or face shield[.]" *Id.* ¶¶ 1, 3. He goes on to say "[a] violation of the U.S. Constitution or the Washington Constitution constitutes a violation of [his] firmly held religious beliefs" and his "lawsuits are spiritual documents by which to perform exorcisms, removing demonic forces from the bodies of defendants[.]" *Id.* ¶¶ 7, 10.

Benshoof also alleges he cannot wear a face covering because of an unspecified disability. *Id.* ¶¶ 11-12. As for his alleged disability, Benshoof states he "was sexually abused as a child by someone in a position of trust and authority; as such, demands by [D]efendants that [he] restrict his breathing or cover his face were . . . abusive and triggering[.]" *Id.* ¶ 11.

Next, Benshoof alleges a wide-ranging "RICO Covid-19 Enterprise" against him that seeks "to coerce Washingtonians to wear Experimental Use Authorization . . . medical devices (e.g., face masks and face shields), and . . . to be injected with an

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

[experimental] biologic or treatment (e.g., Pfizer BioNTech 162B2) by propagating false claims." Dkt. No. 47 ¶ 16.

During 2020 and 2021, employees at Defendants Big 5 Sporting Goods, PCC, and Sprouts Farmers Market, LLC asked Benshoof to leave the premises or to don a face mask in compliance with their policies for entry.[5] Gage was present during some of these interactions. On one occasion, a PCC manager, Defendant Zachary Cook, called 911 to have Benshoof "removed from the store" because he refused to wear a face covering, and Cook told Gage that she had to leave the store as well even though she was wearing a mask. *Id.* ¶¶ 232, 235. Cook obtained a restraining order against Benshoof in 2021. *Id.* ¶ 245. According to Benshoof, Cook lied in his petition for the restraining order when he claimed that Benshoof yelled and screamed at him. *Id.* ¶¶ 247-48. In 2023, PCC Vice President of Legal Counsel, Defendant Freya Brier, barred Benshoof from entering all PCC stores. *Id.* ¶ 257.

SPD officers responded to several of these conflicts between Benshoof and store employees. On September 11, 2020, Benshoof entered Sprouts Farmer's Market without a mask, and an employee told him to put on a face covering or leave. *Id.* ¶¶ 81-83. The employee "then grabbed all three copies of [Benshoof's] printed RCW statutes and ran down an aisle." *Id.* ¶ 86. Benshoof chased after him and grabbed him by the shoulders to recover his printouts. *Id.* ¶ 87.

---

[5] Benshoof and Gage also name Central CoOp as a Defendant, but the factual allegations against Central CoOp have nothing to do with masking policies. Benshoof alleges a Central CoOp manager stole his shopping bags from him when he tried to pay for his items. Dkt. No. 47 ¶¶ 273. It's unclear how the Central CoOp employee allegedly violated the constitution by taking his bags.

ORDER DISMISSING PLAINTIFFS' FIRST AMENDED COMPLAINT WITH PREJUDICE - 7

Benshoof called 911 to report Sprouts's employee, and five officers responded, including Defendants Benjamin Coomer and David Sullivan. *Id.* ¶¶ 88-89. "Coomer demanded that [Benshoof] hand [over] his groceries and leave the store." *Id.* ¶ 91. While speaking to the officers outside of Sprouts, "without warning, Sullivan grabbed [Benshoof's] papers out of his hand and officers shoved [him] to the ground, knocking [Benshoof's] hat off and putting his forehead to the pavement." *Id.* ¶ 99. The officers arrested Benshoof for assault and criminal trespass. *Id.* ¶ 100. Benshoof was released from King County Jail the same day. *Id.* ¶ 106.

On September 16, 2020, Benshoof drove to Sprouts's parking lot and called 911 to "make a victim report to police." *Id.* ¶¶ 112-14. Benshoof carried a shotgun strapped to his back. *Id.* ¶ 114. Around eight officers responded to the Sprouts parking lot, including Coomer, and arrested Benshoof. *Id.* ¶ 117-18.

A few months later, on December 16, 2020, Benshoof entered PCC with A.R.W. *Id.* ¶ 179. Benshoof refused to wear a face covering. Defendant Matthew Lentz, an SPD officer, responded with another officer. *Id.* ¶ 182. The officers forced Benshoof and A.R.W. to leave without their groceries under threat of arrest. *Id.* ¶ 184.

Around 11:00 p.m. that night, Benshoof sped past an SPD cruiser. *Id.* ¶¶ 188-89. According to Benshoof, he sought to be pulled over so that he could report being escorted out of PCC. *Id.* Defendant David Auderer, an SPD officer, and another officer arrested Benshoof for driving under the influence. *Id.* ¶ 201. Auderer reported Benshoof had constricted pupils and he suspected opiate use. *Id.* ¶ 203. Benshoof denies using any drugs. *Id.* ¶ 202. Auderer took Benshoof to a hospital for

a blood draw. *Id.* ¶ 207. Benshoof alleges Auderer improperly completed the warrant authorizing the blood draw because it included the wrong date, did not state whether it was issued pursuant to electronic or telephonic procedure, and "[n]o record of Judge Mary Lynch's permission to affix her magistrate's signature to the warrant was filed in the court record of SMC case no. 658268 nor case no. 662870." *Id.* ¶¶ 209, 211, 214.

On February 7, 2021, Benshoof tried to shop at PCC without a face covering. *Id.* ¶ 229. Lentz responded and told Benshoof to leave or be arrested. *Id.* ¶ 234.

On September 23, 2021, Benshoof tried to visit Jane Addams Middle School without wearing a face covering. *Id.* ¶ 417. Defendant Justin Booker, Vice Principal, told Benshoof to leave, and "refused to bring A.R.W. outside the front doors to speak with [him]." *Id.* ¶ 420.

## 2.3   Allegations against judges and prosecutors.

Benshoof alleges Seattle Municipal Court and King County Superior Court judges issued orders and warrants even though he had not been properly served with criminal process. Dkt. No. 47 ¶¶ 283, 454, 460, 470, 479, 483, 490, 498. He also alleges those same judges lacked subject-matter jurisdiction. *Id.* ¶¶ 285, 315, 369, 469. Pursuant to a general order issued June 17, 2020, judges would not allow Benshoof to appear in person in the courtroom without a mask unless he presented a valid medical exemption letter. *Id.* ¶¶ 324, 328, 341.

Benshoof further alleges that prosecutors failed to provide evidence of the court's jurisdiction over him. Specifically, he alleges neither Defendant Katrina Outland nor Defendant Soheila Sarrafan, both criminal prosecutors, provided

ORDER DISMISSING PLAINTIFFS' FIRST AMENDED COMPLAINT WITH PREJUDICE - 9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

evidence of legal service of criminal process and that Sarrafan proposed $250,000 for his bail and only $5,000 for an African-American defendant in another case. *Id.* ¶¶ 469-70, 482-83, 472, 497-98, 501, 506.

## 3.  DISCUSSION

### 3.1    Legal Standards.

#### 3.1.1      Rule 12(b)(6).

The Court will grant a Rule 12(b)(6) motion to dismiss only if the complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). The plausibility standard is less than probability, "but it asks for more than a sheer possibility" that a defendant did something wrong. *Id.* (citations omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). In other words, a plaintiff must have pled "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

When considering a motion to dismiss, the Court accepts factual allegations pled in the complaint as true and construes them in the light most favorable to the plaintiff. *Lund v. Cowan*, 5 F.4th 964, 968 (9th Cir. 2021). But courts "do not assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (citations

1    omitted). Thus, "conclusory allegations of law and unwarranted inferences are

2    insufficient to defeat a motion to dismiss." *Id.* (internal quotation marks omitted).

3        Pro se pleadings, such as the First Amended Complaint here, are to be

4    liberally construed on a motion to dismiss. *Hebbe v. Pliler,* 627 F.3d 338, 342 (9th

5    Cir. 2010) (while *Twombly-Iqbal* imposed a "higher" plausibility standard, they did

6    not alter court's obligation to construe pro se complaints "liberally when evaluating

7    them under *Iqbal*").

8        ### 3.1.2    The Court's review under 28 U.S.C. § 1915.

9        When a litigant proceeds in forma pauperis ("IFP"), "the court shall dismiss

10   the case at any time if the court determines that . . . the action . . . (i) is frivolous or

11   malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks

12   monetary relief against a defendant who is immune from such relief." 28 U.S.C. §

13   1915(e)(2)(i)–(iii); *see Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (internal

14   citation omitted) ("[S]ection 1915(e) not only permits but requires a district court to

15   dismiss an [IFP] complaint that fails to state a claim."). "The standard for

16   determining whether a plaintiff has failed to state a claim upon which relief can be

17   granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure

18   12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108,

19   1112 (9th Cir. 2012) (citing *Lopez*, 203 F.3d at 1122).

20

21   **3.2    Benshoof and Gage's Section 1983 claims against private parties fail
         as a matter of law.**

22

23

1

2

### 3.2.1    Section 1983 claims against Owen, Lerman, and Hermsen.

3

Benshoof brings many Section 1983 claims against Owen, Lerman, and

4

Hermsen, three private individuals, largely based on the custody disputes between

5

Benshoof and Owen.[6] It is "well-settled," however, "that federal district courts have

6

no jurisdiction over child custody issues, which are exclusively matters of state law."

7

*Benshoof v. Keenan*, No. C23- 751-RAJ, 2023 WL 4142956, at *1 (W.D. Wash. June

8

12, 2023) (citing *Ankenbrandt v. Richards*, 504 U.S. 689, 702-04 (1992)) (affirming

9

the domestic relations exception "divests the federal courts of power to issue

10

divorce, alimony[,] and child custody decrees."). This Court and others have

11

cautioned Benshoof more than once that he cannot seek federal relief for child

12

custody issues. *See id*; *Benshoof v. Fauci, et al.*, No. 22-cv-1281-LK, Dkt. No. 7 (W.D.

13

Wash. Oct. 31, 2022). But he persists here with the same or substantially similar

family-law related claims nevertheless.

14

In any event, to state a Section 1983 claim, a plaintiff must "plead that (1)

15

the defendants acting under color of state law (2) deprived plaintiffs of rights

16

secured by the Constitution or federal statutes." *Gibson v. United States*, 781 F.2d

17

1334, 1338 (9th Cir. 1986). The Ninth Circuit has "recognized at least four different

18

general tests that may aid us in identifying state action: (1) public function; (2) joint

19

action; (3) governmental compulsion or coercion; and (4) governmental nexus."

20

21

22

[6] These claims include Causes of Action Nos. 3, 4, 5, 6, 7, 11, 12, 13, 14, 15, 16, 17, 18, 19, 21, 22, 28, and 38.

23

*Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 747 (9th Cir. 2020) (internal quotation marks omitted).

For Owen, Lerman, and Hermsen, Benshoof tries to meet the second test— joint action. "Under the joint action test, courts examine whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002) (internal quotation marks omitted). The primary inquiry under the test is "whether the state has so far insinuated itself into a position of interdependence with the private actor that it must be recognized as a joint participant in the challenged activity." *Id.* (internal quotation marks omitted).

On this score, Benshoof alleges Owen, Lerman, and Hermsen "were private individuals pervasively entwined in joint action with state actors as integral participants in retaliation against [Benshoof]" and "integral participants in joint action with state actors to set in motion a series of events" leading to constitutional violations. Dkt. No. 47 ¶¶ 649, 682, 706, 729, 758, 894, 1082. But Benshoof identifies no state actor acting in concert with Owen, Lerman, and Hermsen, and he identifies no constitutionally protected right that they have acted to deprive him of. The mere fact that Owen and her friends Lerman and Hermsen resorted to the courts and were on the winning side of the custody action does not make them co-conspirators or joint actors with the courts or law enforcement. *See Dennis v. Sparks*, 449 U.S. 24, 28 (1980).

Standing alone, Benshoof's conclusory allegations about a conspiracy are not enough to state a plausible Section 1983 claim against private actors. *See Simmons*

*v. Sacramento Cnty. Superior Ct.*, 318 F.3d 1156, 1161 (9th Cir. 2003) (finding a plaintiff's "conclusory allegations that the lawyer was conspiring with state officers to deprive him of due process . . . insufficient."); *O'Handley v. Padilla*, 579 F. Supp. 3d 1163, 1184 (N.D. Cal. 2022) ("generalized statements about working together do not demonstrate joint action.").

Therefore, Benshoof cannot maintain Section 1983 claims against Owen, Lerman, and Hermsen.

### 3.2.2    Section 1983 claims against Admon, Cliber, Franklin-Bihary, and Russ.

Benshoof also brings Section 1983 claims against the private attorneys involved in his various lawsuits against Owen, Lerman, and Hermsen.[7] Cliber moved to dismiss Benshoof's claims arguing he fails to show state action and that his claims are barred by res judicata.

Benshoof again claims "state action" through joint action, making the same factual allegations as before: Admon, Cliber, Franklin-Bihary, and Russ "were private individuals pervasively entwined in joint action with state actors as integral participants" in violating or denying Benshoof's constitutional rights. Dkt. No. 47 ¶¶ 649, 682, 706, 729, 758, 811, 822, 867, 876, 894, 905, 916.

Private lawyers are generally not state actors. *See Simmons*, 318 F.3d at 1161 (holding plaintiff could not sue counsel under Section 1983 because he was a "lawyer in private practice who was not acting under color of state law" and

---

[7] These claims include Causes of Action Nos. 3, 4, 5, 6, 7, 11, 12, 13, 14, 15, 16, 17, 18, 19, 21, 22, and 38.

conclusory conspiracy allegations were insufficient). And Benshoof's conclusory claims—devoid of any factual adornment—fail to overcome this presumption. He fails to allege facts plausibly showing that the private lawyers at issue actually acted in concert with state officials to deny Benshoof of his rights ensured by the Constitution.

As a result, Benshoof's Section 1983 claims against Admon, Cliber, Franklin-Bihary, and Russ all fail.

### 3.2.3   Section 1983 claims against Big 5 Sporting Goods, Central CoOp, PCC, Sprouts, Cook, and Brier.

Like his claims against private persons, Benshoof and Gage's Section 1983 claims against private companies and their employees fail for a lack of state action.

Benshoof and Gage allege, "[a]s private entities, Big 5, Central CoOp, PCC, and Sprouts exercised powers traditionally exclusively reserved to the state by imposing face covering requirements." Dkt. No. 47 ¶ 40. The Court construes this as an effort to satisfy the "public function" test to show state action. *Rawson*, 975 F.3d at 747.

Under the public function test, the function at issue must be "both traditionally and exclusively government." *Id.* at 748. Put differently, the question is "whether the defendant has exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* (internal quotation marks omitted). "Very few functions satisfy this 'public function' test." *A&A Towing, Inc. v. TEGSCO, LLC*, No. 3:21-CV-00049-LRH-WGC, 2021 WL 4096969, at *5 (D. Nev. Sept. 7, 2021) (collecting cases).

1   "The mere fact that a business is subject to state regulation does not by itself

2   convert its action into that of the State[.]" *Jackson v. Metro. Edison Co.*, 419 U.S.

3   345, 350 (1974)*; see also Kiss v. Best Buy Stores*, No. 3:22-CV-00281-SB, 2022 WL

4   17480936, at *3 (D. Or. Dec. 6, 2022), *aff'd sub nom. Kiss v. Best Buy Stores, Ltd.*

5   *P'ship*, No. 23-35004, 2023 WL 8621972 (9th Cir. Dec. 13, 2023) (holding company's

6   compliance with state health regulation does not convert its action into that of the

7   state).

8   Accordingly, the mere fact that Big 5, Central CoOp, PCC, and Sprouts

9   enforced mask requirements consistent with the state's COVID-19 policies does not

10   satisfy the public function test and convert their actions into state action.

11   As for Benshoof and Gage's claims against PCC employees Brier and Cook,

12   Plaintiffs allege they "were private individuals pervasively entwined in joint actions

13   with state actors as integral participants to deny [Benshoof and Gage] the full and

14   equal enjoyment of the goods and service[s], and facilities of PCC." Dkt. No. 47 ¶

15   796. And that "Brier, Cook, and [Seattle Municipal Court Judge] Lynch, acted as

16   integral participants to set in motion a series of events by which [Benshoof] would

17   be punished for his beliefs by denying him the full and equal enjoyment of the

18   goods, service[s], and facilities of PCC through restraining orders." *Id.* ¶ 807.

19   Construing the complaint liberally, as it must, the Court views Plaintiffs'

20   allegations as an effort to satisfy the "joint action" test discussed above. *Rawson*,

21   975 F.3d at 747; *see supra* Section 3.2.1. Benshoof and Gage's allegations mirror

22   those in *Kiss*, an Oregon District Court case. *Kiss v. Best Buy Stores*, No. 3:22-CV-

23   00281-SB, 2022 WL 17480936, at *1 (D. Or. Dec. 6, 2022), *aff'd sub nom. Kiss v.*

*Best Buy Stores, Ltd. P'ship*, No. 23-35004, 2023 WL 8621972 (9th Cir. Dec. 13, 2023). In *Kiss*, retail employees confronted the plaintiff and called police when he entered a Best Buy retail store without wearing a face covering in violation of the store's mask requirement. *Id.* at *1. The district court found no state action, rejecting the plaintiff's argument that summoning the police to arrest someone constitutes sufficient joint action to transform a private party into a state actor. *Id.* at *4. Ultimately, because the plaintiff did not allege any agreement between Best Buy and the police, the allegations could not support an inference of conspiracy. *Id.* at *5.

The same reasoning applies here. Cook called police to remove Benshoof and Gage from PCC and obtained a protective order. Beyond these facts, Benshoof and Gage make no allegations to suggest some type of collusion that indicates a broader conspiracy. *See Dennis*, 449 U.S. 24, 28 (1980) (resorting to the courts and being on the winning side of a legal action does not make a party a co-conspirator or joint actor with the state).

Because both theories of state action fail, Benshoof and Gage's Section 1983 claims against private companies and their employees cannot proceed.

### 3.3    Plaintiffs' Section 1983 claims against immune parties fail as a matter of law.

#### 3.3.1    Section 1983 claims against Seattle Municipal Court and King County Superior Court judges.

"Judges are absolutely immune from damage actions for judicial acts taken within the jurisdiction of their courts[.]" *Schucker v. Rockwood*, 846 F.2d 1202, 1204

1   (9th Cir. 1988) (per curiam) (citations omitted). Indeed, a judge retains absolute

2   immunity even when the judge erroneously interprets jurisdiction. *See Sadoski v.*

3   *Mosley*, 435 F.3d 1076, 1079 (9th Cir. 2006) (upholding immunity where a judge

4   "acted in excess of his jurisdiction" but did "not act in clear absence of all

5   jurisdiction").

6           Benshoof alleges several judges acted without personal jurisdiction over him.

7   But even if the Court assumes without deciding that the state courts lacked

8   personal jurisdiction over Benshoof, the judges remain shielded by immunity. *See*

9   *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1302 (9th Cir. 1989) ("[A] judge

10  is entitled to immunity even if there was no personal jurisdiction over the

11  complaining party.") (*quoting Ashelman v. Pope*, 793 F.2d 1072, 1076 (9th Cir.

12  1986)).

13          Benshoof also alleges that the state courts lacked subject matter jurisdiction

14  to hear his cases, but he makes an incoherent argument about why. He claims all

15  orders relating to his custodial disputes are invalid because he and Owen did not

16  share "domestic relations." Dkt. No. 47 ¶¶ 14, 404, 454, 567. But this simply

17  rehashes unsuccessful legal arguments Benshoof advanced before the judges at

18  issue, placing the dispute and the judges' rulings squarely within the scope of

19  judicial immunity. *See* Dkt. No. 13-1 at 339, 361, 425-26, 436, 439.

20          In addition, Benshoof sues various judges that did not allow him to enter

21  their courtrooms without a face mask or shield or a medical exemption letter.

22  Because Benshoof refused to follow the masking policies, he often appeared

23  remotely during hearings.

ORDER DISMISSING PLAINTIFFS' FIRST AMENDED COMPLAINT WITH PREJUDICE - 18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

"Administrative decisions, even though they may be essential to the very functioning of the courts," are not within the scope of judicial immunity. *Forrester v. White*, 484 U.S. 219, 228-30 (1988). Even if requiring Benshoof to comply with a masking policy qualifies as an administrative decision for which judges enjoy no immunity, there is no constitutional violation to sustain a Section 1983 claim as explained below.

Benshoof argues the courts' masking requirements violated the First, Fourth, Fifth, Ninth, and Fourteenth Amendments, because they denied him "due process" and the "right to appear in courtrooms."[8] Dkt. No. 47 ¶¶ 638-41. His claims are rooted in his belief that masking requirements burdened his religious expression or discriminated against him because of his religion.[9] *Id.* ¶ 3 ("Plaintiff is spiritually proscribed from being coerced or forced to wear a face mask or face shield (collectively 'face covering')"). These allegations fall short for many reasons.

---

[8] "[T]he Ninth Amendment [does not] provide a source of rights protected for purposes of pursuing a section 1983 claim." *Koenig v. Snead*, 977 F.2d 589 (9th Cir. 1992). And the Fifth Amendment's Due Process Clause only applies to federal, not state, actors. *Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir.2008) ("[T]he Fifth Amendment's due process clause only applies to the federal government."). Thus, Benshoof fails to state a legally cognizable claim for the depravation of these constitutional guarantees.

[9] Benshoof also alleges the courts' masking policies discriminated against him based on his disability. But the ADA provides a comprehensive remedial scheme for disability discrimination, which forecloses Section 1983 claims based on disability discrimination premised on the Act. *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) ("[W]e hold that a plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation Act."). The Court addresses Benshoof's separate ADA claim below. *See infra* Section 3.7.

ORDER DISMISSING PLAINTIFFS' FIRST AMENDED COMPLAINT WITH PREJUDICE - 19

1
2
3
4
5

First, the state and local courts at issue recognized medical exemptions and it appears Benshoof obtained one. He alleges, at one point, Judge Crawford-Willis stated that his exemption "had been invalidated by 'Omicron.'" Dkt. No. 47 ¶ 341. Benshoof does not allege that he was denied the option of renewing his exemption. So it is doubtful that a deprivation occurred.

6
7
8
9
10
11
12
13
14

Second, "[a] person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of her religion." *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015). "A substantial burden places more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify [their] behavior and to violate [their] beliefs." *Id.* at 1031-32 (internal quotation omitted). Benshoof does not show why wearing a mask imposes substantial burdens on his religion—a religion that, according to Benshoof, is practiced exclusively by him. *See* Dkt. No. 47 ¶ 14.

15
16
17
18
19
20
21

Third, "[t]he right to exercise one's religion freely . . . does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability." *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1075 (9th Cir. 2015). Because the mask mandate is a neutral law of general applicability, it need only survive rational basis review to survive constitutional scrutiny and requiring face coverings during the COVID-19 pandemic was a rational measure to stop the spread of the virus. *Denis v. Ige*, 538 F. Supp. 3d 1063, 1076 (D. Haw. 2021).

22
23

Fourth, to the extent Benshoof attempts to bring an equal protection claim based on his religious beliefs, he must allege facts plausibly showing the defendants

intentionally acted in a discriminatory fashion. *FDIC v. Henderson*, 940 F.2d 465, 471 (9th Cir. 1991). But as noted earlier, the mask mandate applied with equal force to all. There are no allegations in the complaint which, if true, plausibly suggest that Benshoof was the victim of intentional discrimination on account of his religion. Benshoof may also try to bring an equal protection claim as a "class of one." To plead a class-of-one equal protection claim, Benshoof must allege facts showing that he has been "[1] intentionally [2] treated differently from others similarly situated and that [3] there is no rational basis for the difference in treatment." *SmileDirectClub, LLC v. Tippins*, 31 F.4th 1110, 1122–23 (9th Cir. 2022). There are no such allegations in the First Amended Complaint.

Finally, Benshoof alleges that Judges Crawford-Willis and Gregory violated the Fourth Amendment by "demanding [Benshoof] obtain and provide a medical exemption letter as a condition of being allowed to enter SMC courtrooms without wearing a face covering." Dkt. No. 47 ¶¶ 771, 773.

Even assuming for argument's sake that judicial immunity does not apply, these circumstances do not constitute a search under the Fourth Amendment and the court did not subject Benshoof to coercion because Benshoof voluntarily surrendered his medical exemption letter. Dkt. No. 55 at 5. A Fourth Amendment claim requires that the government violated a legitimate expectation of privacy in the information obtained. But there is no legitimate expectation of privacy in information voluntarily given to third parties. *United States v. Barnes*, No. CR18-5141 BHS, 2019 WL 2515317, at *5 (W.D. Wash. June 18, 2019), *aff'd*, No. 20-

1    30059, 2021 WL 4938126 (9th Cir. Oct. 22, 2021) (citing *Smith v. Maryland*, 442

2    U.S. 735, 743-44 (1979); *United States v. Miller*, 425 U.S. 435, 442-44 (1976)).

3        Benshoof's claim still fails even if the Court construes it liberally as a Fifth

4    Amendment takings claim. "A property owner has an actionable Fifth Amendment

5    takings claim when the government takes his property without paying for it." *Knick*

6    *v. Twp. of Scott, Pennsylvania*, 588 U.S. 180, 185, (2019). Benshoof has not alleged a

7    taking since, as explained above, he voluntarily surrendered the letter. Nor has he

8    requested compensation or shown that the letter itself is of value. Thus, he has not

9    alleged a plausible Fifth Amendment takings claim.

10       In sum, Benshoof makes scattershot accusations about his rights being

11   violated, but he fails to state a plausible claim that the state and local judges

12   committed a constitutional violation. *See, e.g.*, *Falcone v. Dickstein*, 92 F.4th 193,

13   197 (3d Cir. 2024) ("A question shadowing suits such as these is whether there is a

14   First Amendment right to refuse to wear a protective mask as required by valid

15   health and safety orders put in place during a recognized public health emergency.

16   Like all courts to address this issue, we conclude there is not."); *United States v.*

17   *James*, No. CR-19-08019-001-PCT-DLR, 2020 WL 6081501, at *2 (D. Ariz. Oct. 15,

18   2020) (finding that the courtroom mask requirement did not violate the defendant's

19   Sixth Amendment right or cause undue prejudice). Accordingly, the Court dismisses

20   Benshoof's Section 1983 claims against Judges Chess, Crawford-Willis, Eisenberg,

21   Gregory, Keenan, Lynch, and Roache.

22

23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

### 3.3.2      Section 1983 claims against prosecutors.

Prosecutors are absolutely immune from Section 1983 actions when performing functions "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). In other words, a "prosecutor is fully protected by absolute immunity when performing the traditional functions of an advocate." *Kalina v. Fletcher*, 522 U.S. 118, 131 (1997). "[T]he functional nature of the activities being performed, not the status of the person performing them, is the key to whether absolute immunity attaches." *Stapley v. Pestalozzi*, 733 F.3d 804, 810 (9th Cir. 2013).

Benshoof alleges Outland and Sarrafan prosecuted Benshoof with allegedly insufficient evidence of legal process and they proposed excessive bail amounts. Even taking Benshoof's allegations as true, Outland's and Sarrafan's conduct was all prosecutorial in nature. Thus, immunity bars Benshoof's Section 1983 claims against Outland and Sarrafan.

### 3.4      Benshoof's Section 1983 claims against SPD officers.

Benshoof names several SPD officers as defendants. "Qualified immunity affords limited protection to public officials," like police officers, "faced with liability under 42 U.S.C. § 1983, insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Shafer v. Cnty. of Santa Barbara*, 868 F.3d 1110, 1115 (9th Cir. 2017). The "'driving force' behind creation of the qualified immunity doctrine was a desire to ensure that 'insubstantial claims' against government officials will be resolved prior to

1   discovery." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)) (quoting *Anderson v.*

2   *Creighton*, 483 U.S. 635, 640, n. 2 (1987)). For this reason, courts must resolve

3   "immunity questions at the earliest possible stage in litigation.'" *Id.* (quoting *Hunter*

4   *v. Bryant*, 502 U.S. 224, 227)).

5          To determine whether qualified immunity applies, courts must determine "(1)

6   whether a public official has violated a plaintiff's constitutionally protected right;

7   and (2) whether the particular right that the official has violated was clearly

8   established at the time of the violation." *Id.* (citing *Kirkpatrick v. Cnty. of Washoe*,

9   843 F.3d 784, 788 (9th Cir. 2016) (en banc)). These two prongs may be considered

10  "in whichever order would expedite resolution of the case." *Morales v. Fry*, 873 F.3d

11  817, 821 (9th Cir. 2017) (citing *Pearson*, 555 U.S. at 236-239).

12         Here, the Court first considers whether Benshoof alleges SPD officers

13  violated his constitutionally protected rights. Because Benshoof fails to allege SPD

14  officers committed constitutional violations, he fails to overcome the first prong of

15  qualified immunity and likewise fails to state Section 1983 claims against them.

16

17       **3.4.1    Qualified immunity bars Benshoof's Section 1983 First
             Amendment Claims against the SPD officers.**

18         Benshoof lumps his accusations against multiple SPD defendants together

19  without explaining the exact conduct of each. Benshoof appears to allege that SPD

20  officers did not arrest him for criminal trespass, assault, and suspected driving

21  under the influence as they claimed, but that they arrested him for refusing to wear

22  a mask in grocery stores and making victim reports, activities that, according to

23  Benshoof, are constitutionally protected. Specifically, he alleges SPD officers

1
2
3
4
5

violated his First Amendment rights of "freedom of speech and expression," "free exercise of religion," "father-son association," "petition[ing] for redress of grievances," and freedom from "forced association" with InstaCart. At bottom, Benshoof alleges retaliatory arrest in violation of the First Amendment for engaging in protected speech or religious expression.

6
7
8
9
10
11
12
13
14
15
16
17

There are two problems, however, with his claim. To start, Benshoof has not plausibly alleged that he was engaged in protected speech. To qualify as protected speech, inherently expressive conduct must be of such a nature that there is a high likelihood the message will be understood by those who view it. *Falcone*, 92 F.4th at 206 (citing *Texas v. Johnson*, 491 U.S. 397, 404 (1989)). But "wearing a medical mask—or refusing to do so—is not the type of thing someone typically does as 'a form of symbolism.'" *Id.* at 207 (quoting *Spence v. State of Wash.*, 418 U.S. 405, 410 (1974)). Therefore, in the context of a grocery store that required masking during the pandemic, the act of simply not wearing a mask is not one that would qualify as protected expression. Further, as discussed above, Benshoof does not demonstrate why wearing a mask imposes substantial burdens on his religion, and how refusing to wear a mask was protected religious conduct.

18
19
20
21
22
23

Second, to establish that an arrest was in retaliation for protected speech, the plaintiff must allege and prove the absence of probable case. *Nieves v. Bartlett*, 587 U.S. 391, 404 (2019) ("Absent [a showing of probable cause], a retaliatory arrest claim fails."). Whether probable cause existed is viewed objectively. *Id.* at 403. Benshoof alleges a lack of probable cause, but this is a legal conclusion—his factual allegations tell a different story. Plaintiff pleads a pattern of entering retail

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

establishments and refusing to don a mask, refusing to leave when asked by store employees, leading to arrests for criminal trespass. In one instance, he returned to the store armed, leading to another arrest. *See* Dkt. No. 47 ¶¶ 106-128. In another incident, Benshoof alleges that he tried "to be pulled over" by an SPD officer by speeding past the officer in his car, which lead to Benshoof's arrest. *Id.* ¶¶ 188-195. Thus, even taking his allegations as true, Benshoof has failed to state a plausible claim that the SPD officers lacked probable cause for his arrests. *See Rodis v. City, Cnty. of San Francisco*, 558 F.3d 964, 969 (9th Cir. 2009) ("Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested.").

As for Benshoof's allegations that SPD officers denied him the right to petition the government and forced him to associate with InstaCart, they are plainly frivolous—none of his factual allegations support these claims. *See L. F. v. Lake Washington Sch. Dist. #414,* 947 F.3d 621, 626 (9th Cir. 2020) ("First Amendment does not compel the government to respond to speech directed toward it.").

The SPD officers are entitled to qualified immunity against Benshoof's First Amendment claim since he has failed to plead a plausible violation of his protected speech or associational rights.

ORDER DISMISSING PLAINTIFFS' FIRST AMENDED COMPLAINT WITH PREJUDICE - 26

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

### 3.4.2    Qualified immunity bars Benshoof's Section 1983 Fourteenth Amendment Claim against the SPD officers.

Benshoof also claims the officers violated his Fourteenth Amendment rights by "interfer[ing] with parent/child relationship" and denying him "equal protection." Specifically, he alleges SPD officers Ladd and Wallace interfered in his relationship with his son, A.R.W. "'Parents and children have a well-elaborated constitutional right to live together without governmental interference.'" *Hardwick v. Cnty. of Orange*, 980 F.3d 733, 740 (9th Cir. 2020) (quoting *Wallis v. Spencer*, 202 F.3d 1126, 1136 (9th Cir. 2000)). "That right is an essential liberty interest protected by the Fourteenth Amendment's guarantee that parents and children will not be separated by the state without due process of law except in an emergency." *Id.* The First Amendment also protects family relationships from "unwarranted interference[.]" *Keates v. Koile*, 883 F.3d 1228, 1236 (9th Cir. 2018).

Benshoof alleges Ladd and Wallace arrested him on September 3, 2021, and June 1, 2023, for violating two different protection orders. Although Benshoof argues these orders were invalid, he does not allege how these arrests interfered with his relationship with his child. Benshoof's claims do no allege anything beyond "state employees carrying out their duties." *See Woodrum v. Woodward Cnty., Okl.*, 866 F.2d 1121, 1126 (9th Cir. 1989) (state interference must rise beyond mere negligence of state employees carrying out their duties). This does not give way to an interference claim.

Benshoof also claims SPD officers violated his Fourteenth Amendment equal protection rights by enforcing policies that "treated people who wore a face covering

more favorably than people without face covering," because such policies "were not rationally related to serving an alleged legitimate government interest of preventing the community spread of a disease." Again, this unsupported, conclusory statement lacks merit.

The SPD officers are entitled to qualified immunity because Benshoof has failed to state a plausible violation of his Fourteenth Amendment rights.

### 3.4.3   Benshoof fails to state a Section 1983 Fourth Amendment Claim against the SPD officers.

"The Fourth Amendment guards the 'right of the people to be secure in their persons against unreasonable searches' and provides that "no Warrants shall issue, but upon probable cause." *Mitchell v. Wisconsin*, 588 U.S. 840, 849 (2019) (cleaned up). Requiring an individual to submit to a blood draw is a search of the person under the Fourth Amendment. *Id.*

Benshoof alleges Auderer violated his Fourth Amendment rights by arresting him without probable cause and subjecting him to a blood draw without a valid warrant. Dkt. No. 47 ¶¶ 782-793. But this claim is couched in conclusory terms and conflicts with Benshoof's factual assertions and the state court records his complaint explicitly incorporates by reference. *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d at 1051. As noted earlier, Benshoof intentionally "sped past Foy's patrol cruiser in order to be pulled over . . . ." Dkt. No. 47 ¶ 200. The police suspected him of driving under the influence, and the court documents Benshoof references show that Seattle Municipal Court Judge Mary Lynch issued a warrant upon a finding of probable cause. Dkt. No. 13-3 at 235-36. (Benshoof has named Judge Lynch as a

1    defendant here. *See infra* Section 3.3.1.) Police presented the warrant to Benshoof

2    before his blood was drawn by medical personnel. Dkt. No. 47 ¶¶ 208-211. The

3    alleged scrivener's error on the warrant concerning the date issued does not

4    invalidate the warrant. *United States v. Negrete-Gonzales*, 966 F.2d 1277, 1283 (9th

5    Cir. 1992) ("Technical errors . . . require suppression only if: (1) the defendants were

6    prejudiced by the error, or (2) there is evidence of deliberate disregard of the rule.").

7        Thus, Benshoof fails to allege a plausible claim that his Fourth Amendment

8    rights were violated. *Beasley v. Thomas*, No. 12-CV-01640-WHO (PR), 2014 WL

9    4078235, at *2 (N.D. Cal. Aug. 18, 2014) ("A search conducted in good faith reliance

10   on a facially valid warrant is constitutional as long as the officer's reliance on the

11   magistrate judge's determination that probable cause existed was objectively

12   reasonable, the magistrate judge did not wholly abandon [their] judicial role, and

13   the officers did not act in bad faith by misleading the magistrate judge.") (citing

14   *United States v. Huggins*, 299 F.3d 1039, 1043-44 (9th Cir. 2002)).

15       Benshoof's unlawful imprisonment and malicious prosecution claims are

16   simply iterations of other failed claims, *see supra* Sections 3.4.1, 3.4.2, 3.4.3, and

17   they fail to state a plausible claim against SPD officers, or at least one that survives

18   qualified immunity analysis.

19       Lastly, Benshoof's allegation that SPD officers violated the U.S. Constitution,

20   Art. I, Sections 9 and 10, is nonsensical and merits no further discussion.

21

22

23

1

2

**3.5   Benshoof's remaining causes of action under Section 1983 against individual Defendants fail to state a claim.**

Benshoof alleges that, by not allowing him to enter Jane Addams Middle School without a mask and by not bringing A.R.W. to him, Vice Principal Booker violated "separation of powers," his First Amendment rights of free speech, religious expression, and "father-son association," his Fourteenth Amendment rights of equal protection and to be free from interference in his relationship with A.R.W., and the U.S. Constitution, art. 1 §§ 9, 10.

The Court's analysis above applies here. It did not violate Benshoof's First and Fourteenth Amendment constitutional rights to require that he comply with the School's masking policy to enter. Nor does Benshoof demonstrate how Booker telling him to leave on one occasion interfered with his and A.R.W.'s relationship in anyway. "[S]eparation of powers" relates to our federal government—Benshoof fails to show how Booker somehow violated these principles as a public school Vice Principal. *See Mayor of City of Philadelphia v. Educ. Equal. League*, 415 U.S. 605, 650 n.13 (1974) ("The Constitution does not impose on the States any particular plan for the distribution of governmental powers."); *Sweezy v. State of New Hampshire by Wyman,* 354 U.S. 234, 255 (1957) ("[T]he concept of separation of powers embodied in the United States Constitution is not mandatory in state governments."). Benshoof's U.S. Constitution, art. 1 §§ 9, 10 claims make no sense— he merely alleges "[his] class [has a constitutional right] to be free from any bill of attainder, including bills of pains and penalties." Dkt. No. 47 ¶ 971. The Court dismisses all Benshoof's Section 1983 claims against Booker.

1

2        As to Defendants Jenny Durkan, the former mayor of Seattle, and Ann

3   Davison, the current Seattle City Attorney, Benshoof alleges several Section 1983

4   claims based on their roles as "the final policymaker[s]" for the City of Seattle and

5   the City Attorney's Office, respectively. *See* Dkt. No. 47 ¶¶ 667, 674, 676, 697-98,

6   703, 709, 724, 726, 732, 755, 799, 808, 825, 845, 864, 937, 955, 987, 1017, 1027,

7   1039, 1052, 1065, 1071-72, 1078, 1098, 1103, 1111, 1131, 1149. But in these

8   allegations, Benshoof does not identify an actual policy that caused a constitutional

9   violation. He claims Davison has final policymaking authority over prosecutorial

10  discretion and the "malicious prosecution of those of Plaintiff's class," but he does

11  not identify any specific custom or practice that injured him. *Id.* ¶¶ 1104, 1118,

12  1123-24, 1137, 1141-42. Benshoof alleges Durkan served as "final policy for the City

13  regarding Covid policies," but none of the facts he alleges track with this assertion

14  given that he claims other actors are responsible for instituting mask policies at

15  local courthouses and businesses. *Id.* ¶¶ 1045, 1058.

16       At most, Benshoof argues these policies were inspired by Durkan's

17  "proclamations." *See id.* ¶ 72. Benshoof claims that, as mayor, she "oversaw the

18  implementation of quasi-medical apartheid policies through Seattle" and used "the

19  internet to fraudulently tell the public that the 'covid vaccines' were 'approved,'

20  'safe,' and 'effective.'" Dkt. No. 47 ¶¶ 32-33. Although, at this stage of the litigation,

21  the Court must accept factual allegations pled in the complaint as true, it need not

22  engaged in implausible conspiracy theories. *Morehead v. United States*, et al., No.

23  1:23-CV-00075-JAR, 2023 WL 4295423, at *1 (E.D. Mo. June 30, 2023) (citing

    *Denton v. Hernandez*, 504 U.S. 25, 31 (1992)) (holding a court may dismiss legal

1
2
theories that are "indisputably meritless" or based on factual allegations that are clearly baseless).

3
4
5
Benshoof has not alleged actions taken by Davison or Durkan that caused a constitutional violation, so the Court dismisses all Section 1983 claims against them.

6
**3.6     Benshoof fails to allege a Section 1983 claim for municipal liability.**

7
8
9
10
11
12
13
14
15
16
17
18
A local governmental unit may not be held responsible for the acts of its employees under a respondeat superior theory of liability. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Instead, to hold a municipality liable, the plaintiff must show that "action pursuant to official municipal policy" caused the constitutional tort. *Id.* Municipal liability attaches when a plaintiff can show that "(1) [they were] deprived of a constitutional right; (2) the municipality has a policy; (3) the policy amounted to a deliberate indifference to [plaintiff's] constitutional right; and (4) the policy was the moving force behind the constitutional violation." *Lockett v. City of L.A.*, 977 F.3d 737, 741 (9th Cir. 2020). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

19
20
21
22
Benshoof sues several local government units: the City of Seattle, King County, and Seattle Public Schools. But he fails to identify a municipal policy that caused him constitutional injury. Instead, he appears to challenge "[t]he discriminatory face covering and 'vaccine' policies of public and private entities"

23

generally as well as the "'No Mask, No Entry' polic[ies] . . . to deny [Benshoof] in-store services pursuant to Governor Inslee's Covid-19 proclamations, and the proclamations of Mayor Durkan" and Seattle Municipal Court's face covering requirements. Dkt. No. 47 ¶ 72.

It is unclear from the facts alleged, however, what "vaccine policies" Benshoof could be referring to given that he never alleges being subject to a vaccine requirement. He claims he could not enter Seattle Public Schools unless he obtained a vaccine but does not allege any facts to support this assertion—the one time a school official asked Benshoof to leave, it was because Benshoof refused to wear a face covering. *Id.* ¶ 33. Moreover, none of the mask policies Benshoof objects to caused him constitutional injury.

Benshoof states the City of Seattle, King County, and Seattle Public Schools, as well as their policymakers, failed to adequately train their employees to prevent "false arrest," retaliation, "malicious prosecution," and "free speech and expression retaliation." *Id.* ¶¶ 643, 668, 677, 679, 700-03, 725-26, 753-54, 764-65, 780-81, 791, 793, 808, 817, 845, 864, 872-73, 890-91, 924-25, 937, 955, 986, 989, 1017, 1023, 1027, 1035, 1039, 1047-52, 1060-65, 1073-78, 1085-1090, 1105-1111, 1125-31, 1143-49, 1156.

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). To give rise to liability, a municipality's failure to train "must amount to 'deliberate indifference to the rights of persons with whom the

1
2
3
4
5
6
7

[untrained employees] come into contact.'" *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). "'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* (citation omitted). A "pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Flores v. Cnty. of L.A.*, 758 F.3d 1154, 1159 (9th Cir. 2014).

8
9
10
11
12
13

Given that Benshoof has not established that any state official caused him constitutional injury, he has failed to allege facts that would meet the "stringent" requirements for a *Monell* claim based on a failure to train. He does not allege a pattern that suggests deliberate indifference. Accordingly, the Court dismisses all Section 1983 claims against the City of Seattle, King County, and Seattle Public Schools.

14

### 3.7   Benshoof fails to state an ADA Title II claim.

15
16
17
18

Benshoof alleges King County, City of Seattle, Seattle Public Schools, Booker, Chess, Crawford-Willis, Durkan, Eisenberg, Gregory, Keenan, Lynch, and Roache violated Title II of the ADA by discriminating against him "due to his physical or mental impairment." Dkt. No. 47 ¶ 1024.

19
20
21
22
23

Title II of the ADA provides "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a claim of disability

discrimination under Title II of the ADA, Benshoof must show that "(1) he is a 'qualified individual with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *Payan v. Los Angeles Cmty. Coll. Dist.*, 11 F.4th 729, 737-38 (9th Cir. 2021) (quoting *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001), *as amended on denial of reh'g* (Oct. 11, 2001)). "The failure to provide [a] reasonable accommodation can constitute discrimination." *Updike v. Multnomah Cnty.*, 870 F.3d 939, 951 (9th Cir. 2017) (cleaned up).

Benshoof alleges he has an unspecified disability and because he "was sexually abused as a child by someone in a position of trust and authority; as such, demands by [D]efendants that [he] restrict his breathing or cover his face were . . . abusive and triggering[.]" Dkt. No. 47 ¶ 11. This allegation is admittedly thin, as Benshoof could have said more about his alleged disability and why it prevents him from wearing a mask, but his claims are enough to plausibly allege a covered disability under the ADA. Even if the Court assumes that Benshoof has established his disability status, however, he fails to allege facts plausibly alleging that the final two elements of this claim are met.

As for the City of Seattle, King County, and Seattle Public Schools, Benshoof does not allege sufficient facts to establish that he was excluded from state court proceedings for failing to wear a mask since he also alleges he could have used several alternatives, including appearing virtually or providing a medical

1
2
3
4

exemption letter. So it's clear that he was not denied services because of his alleged disability. Benshoof also alleges he was asked to leave his son's middle school because he refused to wear a mask. But since Benshoof is not a student, he has not alleged he was denied the benefits of the school's services, programs, or activities.

5
6
7
8
9
10
11
12

Benshoof also tries to sue public employees in their individual capacities for public accommodation discrimination, but the ADA does not allow Title II claims against individual defendants. *Walsh v. Nev. Dep't of Hum. Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) ("individual defendants cannot be held personally liable for violations of the ADA"); *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) (holding plaintiff cannot sue state officials in their individual capacities to vindicate rights created by the ADA). Thus, the Court need not address Benshoof's ADA claim against the persons he has sued in their individual capacities.

13
14
15
16

Accordingly, the Court dismisses Benshoof's ADA claims against the City of Seattle, King County, Seattle Public Schools, as well as the individual Defendants Booker, Chess, Crawford-Willis, Durkan, Eisenberg, Gregory, Keenan, Lynch, and Roache.

17

**3.8    Benshoof fails to state an ADA Title III claim.**

18
19
20
21
22

Title III of the ADA runs parallel to Title II, with Title II covering only public entitles and Title III covering only private entities. *Hernandez v. Cnty. of Monterey*, 70 F. Supp. 3d 963, 973 (N.D. Cal. 2014) (citing Americans with Disabilities Act Title III Technical Assistance Manual Covering Public Accommodations and Commercial Facilities, § III–1.7000).

23

ORDER DISMISSING PLAINTIFFS' FIRST AMENDED COMPLAINT WITH PREJUDICE - 36

1

2

3

4

5

6

7

8

9

10

11

12

To prevail on his Title III discrimination claim, Benshoof must show that "(1) [he is] disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) [he] was denied public accommodations by the defendant because of [his] disability." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007) (citing 42 U.S.C. §§ 12182(a)-(b)). A defendant discriminates based on the plaintiff's disability by "(a) failing to make a requested reasonable modification that was (b) necessary to accommodate the plaintiff's disability." *Mora v. Burn & Plastic Hand Clinic*, No. C23-1008-JLR, 2023 WL 7128855, at *3 (W.D. Wash. Oct. 30, 2023); *see Townsend v. Quasim,* 328 F.3d 511, 518 (9th Cir. 2003) ("As the regulatory language makes clear, entities are required only to make *reasonable* changes in existing policies in order to accommodate individuals' disabilities." (emphasis in original)).

13

14

15

16

17

18

19

20

21

As to Central CoOp, PCC, and Sprouts, not wearing a mask—during the pandemic—was the only "reasonable modification" request Benshoof made. But Benshoof fails to assert any facts establishing that his requested policy modification was *necessary* to accommodate his disability. For example, Benshoof neither alleges that his disability prevented him from wearing a face shield nor that wearing a face shield, as proposed by the stores, was an inadequate means of accommodating his disability. *See* Dkt. No. 47 ¶¶ 73, 253; *see also A.L. ex rel. D.L. v. Walt Disney Parks & Resorts U.S., Inc.*, 900 F.3d 1270, 1296 (11th Cir. 2018) ("[F]acilities are not required to make the preferred accommodation of plaintiffs' choice.").

22

23

Moreover, an accommodation request that is expressly prohibited by government safety regulations is by definition not a reasonable one. *See Bey v. City*

1  *of New York*, 999 F.3d 157, 161 (2d Cir. 2021) ("Just as in the ADA context, we

2  conclude that Title VII cannot be used to require employers to depart from binding

3  federal regulations."). The Washington State Governor and health officials

4  instituted several emergency measures and proclamations, including orders

5  requiring face coverings, with limited exceptions and exemptions, during the

6  COVID-19 pandemic. *See Doscher v. Timberland Reg'l Libr.*, No. 3:22-CV-05340-

7  RJB, 2022 WL 17667907, at *1 (W.D. Wash. Dec. 14, 2022), appeal dismissed (Jan.

8  6, 2023) (recounting Washington state emergency measures to slow the spread of

9  COVID-19); *Doscher v. Timberland Reg'l Libr., No.* 3:22-CV-05340-RJB, 2022 WL

10  4534403, at *2 (W.D. Wash. Sept. 28, 2022) (taking judicial notice of Washington

11  State Governor's COVID-19 emergency proclamations). To the extent Benshoof

12  demanded that stores take action inconsistent with the prevailing public health

13  orders, his accommodation requests were unreasonable.

14        On these alleged facts, Benshoof fails to make out an ADA Title III claim for

15  failure to accommodation against Central CoOp, PCC, and Sprouts.

16        Finally, Benshoof alleges ADA Title III claims against King County, City of

17  Seattle, Seattle Public Schools, Central CoOp, PCC, Sprouts, Booker, Brier, Cook,

18  Coomer, Crawford-Willis, Davidson, Durkan, Gregory, Lentz, Lynch, Outland, and

19  Sullivan. Dkt. No. 47 ¶ 1029. He does not, however, allege that they are "private

20  entit[ies] that ow[n], leas[e], or operat[e] a place of public accommodation," as

21  required to state a claim under this section of the ADA. (As noted above, they are

22  government actors.) Therefore, he cannot state an ADA claim against them under

23  Title III.

1

The Court dismisses Benshoof's ADA Title III claims.

2

**3.9     Benshoof fails to state a claim under 18 U.S.C. §§ 1962(c), (d), 42**
3         **U.S.C. §§ 1985(2), (3), and 42 U.S.C. § 1986.**

4       Benshoof alleges two civil violations of Racketeer Influenced and Corrupt

5   Organization (RICO) Act, 18 U.S.C. § 1962(c) and 18 U.S.C. § 1962(d). Benshoof

6   alleges a statewide enterprise dedicated to punishing his "protected class." He

7   describes this alleged enterprise as follows:

8           The covid-19 proclamations, orders, and policies were the foundation of
            the Covid-19 Enterprise ("C19 Enterprise"), designed, orchestrated,
9           funded, and implemented to coerce Washingtonians to wear
            Experimental Use Authorization ("EUA") medical devices (e.g., face
10          masks and face shields), and to coerce Washingtonians to be injected
            with an EUA biologic or treatment (e.g., Pfizer BioNTech 162b2) by
11          propagating false claims.

12          The Pfizer BioNTech 162b2 "vaccine" was not a "vaccine" pursuant to
            Washington law: 14 it was a gene therapy treatment ("Pfizer GTT").
13
            CISA.gov defines "disinformation" as "deliberately created to mislead,
14          harm, or manipulate a person, social group, organization, or country."
            Defendants spread disinformation to mislead the public, including
15          Plaintiffs, into believing that EUA biologics, treatments and devices
            were "safe," "effective," "FDA approved," "necessary," legally "required,"
16          and "protected" others.

17          It has been without dispute since the Nuremberg Doctors' Trial15 that
            consensual medical experimentation involving investigational products
18          can only exist under conditions that ensure individuals are free from
            coercion, exhibited in Washington Courts' library.16
19
            Individuals have the explicit right to refuse an investigational drug,
20          biologic, or device without incurring a penalty or losing a benefit to
            which they are otherwise entitled.
21
            The C19 Enterprise penalized Plaintiff's protected class for refusing the
22          administration of experimental drugs, biologics, or devices; that is,
            Defendants failed to comply with their duties to obtain the legally
23          effective informed consent of Plaintiff.

Dkt. No. 47 ¶¶ 16-21.

To state a RICO claim, Benshood must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as predicate acts) (5) causing injury to the plaintiff's business or property." *Just Film, Inc. v. Bouno*, 847 F.3d 1108, 1116 (9th Cir. 2017) (quoting *Living Designs, Inc. v. E.I. DuPont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005)). To state a RICO conspiracy under 18 U.S.C. § 1962(d), Benshoof must allege "an agreement to conduct or participate in the affairs of an enterprise through a pattern of racketeering." *United States v. Brooklier*, 685 F.2d 1208, 1216 (9th Cir. 1982).

Benshoof does not allege facts that make his elaborate conspiracy theory plausible. The Court may dismiss legal theories that are "indisputably meritless" or based on factual allegations that are clearly baseless. *Morehead v. United States*, et al., No. 1:23-CV-00075-JAR, 2023 WL 4295423, at *1 (E.D. Mo. June 30, 2023) (citing *Denton v. Hernandez*, 504 U.S. 25, 31 (1992)). "'Clearly baseless' factual allegations include those that are 'fanciful,' 'fantastic,' and 'delusional.'" *Id*. (quoting *Denton,* 504 U.S. at 32-33). Thus, the Court dismisses Benshoof's RICO claims.

Benshoof also alleges several Defendants violated 42 U.S.C. §§ 1985(2), (3), and 42 U.S.C. § 1986. Section 1985(2) proscribes two or more people from conspiring to deter "any party or witness" from attending court or conspiring to impede "the due course of justice . . ., with intent to deny any citizen the equal protection of the law[.]" Benshoof does not allege facts that show he was deterred from attending

1   court—he only alleges his refusal to comply with masking policies prevented him

2   from attending in person. This is not enough to state a claim under § 1985(2).

3        Under Section 1985(3), a plaintiff must allege "(1) a conspiracy; (2) 'for the

4   purpose of depriving . . . any person or class of persons of the equal protection of the

5   laws, or of equal privileges and immunities under the laws'; (3) an 'act in

6   furtherance' of the conspiracy; and (4) an injury or deprivation of rights." *Life Ins.*

7   *Co. of N. Am. v. Reichardt*, 591 F.2d 499, 502 (9th Cir. 1979) (quoting *Griffin v.*

8   *Breckenridge*, 403 U.S. 88, 102-03 (1971)). But "[a] mere allegation of conspiracy

9   without factual specificity is insufficient to support a claim." *Sanchez v. City of*

10  *Santa Ana*, 936 F.2d 1027, 1039 (9th Cir. 1990). As discussed above, Benshoof has

11  not alleged a deprivation of his constitutional rights. Thus, he has not alleged a

12  plausible claim under Section 1985(3). *See Thornton v. City of St. Helens*, 425 F.3d

13  1158, 1168 (9th Cir. 2005) (noting that a plaintiff cannot state a § 1985(3) claim

14  where they cannot state a § 1983 claim based on the same facts).

15       Anyone who knows about a Section 1985 conspiracy and has the power to

16  prevent it, but neglects to do so, violates Section 1986. To plead a Section 1986

17  claim, a plaintiff must first plead a "preexisting violation of § 1985." *Gattineri v.*

18  *Town of Lynnfield, Massachusetts*, 58 F.4th 512, 516 (1st Cir. 2023). Because

19  Benshoof fails to allege a Section 1985 claim, he also fails to allege a claim under

20  Section 1986.

21       Accordingly, the Court dismisses Benshoof's claims under §§ 1962(c), (d), §§

22  1985(2), (3), and § 1986.

23

ORDER DISMISSING PLAINTIFFS' FIRST AMENDED COMPLAINT WITH PREJUDICE - 41

1
2

**3.10   This Court lacks jurisdiction to decide Plaintiffs' request for declaratory judgment.**

3
4
5
6

Plaintiffs seek a declaratory judgment answering six "federal questions." These questions relate to the conduct of Seattle Municipal Court judges, prosecutors, "King County family court," Seattle Public Schools, and a "King County Superior Court judge." None of these questions relate to a live controversy to which the parties require a Court declaration.

7
8
9
10
11
12

The Declaratory Judgment Act (DJA), 28 U.S.C. § 2201, does not provide an independent basis for subject-matter jurisdiction. "Federal courts have regularly taken original jurisdiction over declaratory judgment suits in which, if the declaratory judgment defendant brought a coercive action to enforce its rights, that suit would necessarily present a federal question." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*, 463 U.S. 1, 19 (1983).

13
14
15

Here, none of the Defendants can bring a coercive action to enforce their rights against Benshoof that "would necessarily present a federal question." Accordingly, the Court dismisses Benshoof's claims under the DJA.

16
17

**3.11   The Court denies Benshoof's motion for judicial notice.**

18
19
20
21
22
23

Benshoof moves the Court to take judicial notice of the "adjudicative fact" that the records of his various Seattle Municipal Court cases contain no evidence that the City of Seattle served him criminal summons. Under Rule 201(b), courts may take judicial notice of a fact that is not subject to reasonable dispute because it "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201(b)(2). Judicial notice may be taken "of

court filings and other matters of public record.*" Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). But Benshoof asks this Court to go a step further and draw legal conclusions from and related to his municipal court matters. This is not a fact beyond reasonable dispute, and therefore, not an appropriate subject for judicial notice. Accordingly, the Court DENIES Benshoof's motion, Dkt. No. 167.

### 3.12   This order moots several of Benshoof's pending motions.

Benshoof has eighteen[10] pending motions for default against Defendants City of Seattle, Outland, Owen, Lerman, King County, PCC, Brier, Gregory, Chess, Crawford-Willis, Lynch, Roache, Central CoOp, Russ, Keenan, Admon, and Durkan. Dkt. Nos. 54, 60, 70, 71, 102, 104, 106, 120, 122, 124, 126, 128, 145, 203, 223, 224, 225, 226. In this Order, the Court dismisses all claims against these Defendants, therefore, Benshoof's motions for default are DENIED as moot.

Other pending motions filed by Benshoof are now moot given the Court's ruling —Benshoof's motion "for an order directing the U.S. Marshals Service to serve Plaintiffs' First Amended Complaint," motion for an order "waiving fees and costs associated with the U.S. Marshals Service serving Plaintiffs' First Amended Complaint," "Motion for Judgment on the Pleadings," motion to strike Franklin-Bihary's answer, motion for a thirty-day extension of time to complete service of summons and amended complaint, and motions for extension of time to respond to

---

[10] Benshoof filed two separate motions seeking default against Owen. Dkt. Nos. 70, 223.

1
2

the motions to dismiss. Dkt. Nos. 51, 52, 59, 61, 100, 233, 235 Also moot is Defendants' joint motion for a status conference. Dkt. No. 173.

3
4

### 3.13   The Court denies leave to amend.

5

"A pro se litigant must be given leave to amend [their] complaint, and some

6

notice of its deficiencies, unless it is absolutely clear that the deficiencies of the

7

complaint could not be cured by amendment." *Cato v. United States*, 70 F.3d 1103,

8

1106 (9th Cir. 1995); *Rodriguez v. Steck*, 795 F.3d 1187, 1188 (9th Cir. 2015) ("[The

9

Ninth Circuit has] held that a district court's denial of leave to proceed in forma

10

pauperis is an abuse of discretion unless the district court first provides a plaintiff

11

leave to amend the complaint or finds that amendment would be futile."); *Lucas v.*

12

*Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) ("Unless it is absolutely clear that no

13

amendment can cure the defect, however, a pro se litigant is entitled to notice of the

14

complaint's deficiencies and an opportunity to amend prior to dismissal of the

15

action.").

16

Here, the Court has already given Benshoof a chance to amend, warning him

17

that his complaint must comply with Rule 8 and identifying multiple deficiencies,

18

including his failure to allege state action and how judicial and prosecutorial

19

immunity bar his claims. Dkt. No. 38. Despite these explicit instructions, Benshoof

20

maintained many of the same claims and filed a 184-page First Amended Complaint.

21
22
23

For the reasons discussed in detail above, it would be futile to allow Plaintiffs a second opportunity to amend given that they fail to state constitutional violations,

1   sue immune parties, and allege an extremely implausible RICO conspiracy.

2   *See* *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1117 (9th Cir. 2014)

3   ("[T]he district court's discretion in denying amendment is 'particularly broad' when

4   it has previously given leave to amend.").

5        Benshoof filed a "Notice of Intent to Amend First Amended Complaint and

6   Joinder of Additional Defendants." Dkt. No. 194. This "notice" does not comply with

7   LCR 15(a), as it does not include a copy of the proposed amended pleading as an

8   exhibit. Looking past this deficiency for the sake of judicial economy, the Court

9   finds that Benshoof's proposed changes are futile. Benshoof does not propose fixing

10  any of the problems identified by the Court regarding the lack of constitutional

11  violations and state action, or absolute and qualified immunity. Moreover, Benshoof

12  seeks to add several unrelated parties including Jennifer Beus, Darren Feider, Julie

13  Kline, and Dallas LaPierre. He also seeks to add two additional immune parties:

14  King County Superior Court Judge Marshall Ferguson and prosecutor Sarah

15  MacDonald. Accordingly, this notice does not save Benshoof's claims nor impact the

16  Court's finding that permitting Plaintiffs' to amend a second time would be an

17  exercise in futility.

18        Therefore, the Court dismisses Plaintiffs' First Amended Complaint with

19  prejudice.

20                        **4.  CONCLUSION**

21        Accordingly, the Court GRANTS Defendants' motions to dismiss and

22  DISMISSES all of Plaintiffs' claims with prejudice.

23

ORDER DISMISSING PLAINTIFFS' FIRST AMENDED COMPLAINT WITH PREJUDICE - 45

4.1   The Court DENIES as moot Benshoof's motions for default against
      Defendants City of Seattle, Outland, Owen, Lerman, King County,
      PCC, Brier, Gregory, Chess, Crawford-Willis, Lynch, Roache, Central
      CoOp, Russ, Keenan, Admon, and Durkan, Dkt. Nos. 54, 60, 70, 71,
      102, 104, 106, 120, 122, 124, 126, 128, 145, 203, 223, 224, 225, 226.

4.2   The Court DENIES as moot the following pending motions, Dkt. Nos.
      51, 52, 59, 61, 100, 173, 233, 235

4.3   The Court also DENIES Benshoof's motion for judicial notice, Dkt. No.
      167.

      Dated this 28th day of June, 2024.


      Jamal N. Whitehead
      United States District Judge