Hon. Jamal Whitehead

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KURT BENSHOOF,<br><br>        Plaintiff,<br><br> v.<br><br>MOSHE ADMON, et al.,<br><br>        Defendants | **No.: 2:23-cv-01392-JNW**<br><br>**Amended - MOTION FOR RELIEF FROM ORDER UNDER FED. R. CIV. P. 60(b)(4), 60(b)(3), AND 60(b)(6)**<br><br>**Noted for Hearing:**<br>**March 4, 2026** |

## INTRODUCTION AND RELIEF REQUESTED

Plaintiff respectfully moves for relief from the Order Declaring Plaintiff a Vexatious Litigant, Dkt. 264 ("Order"), pursuant to FRCP 60(b)(4), 60(b)(3), and 60(b)(6).

Relief is warranted on three independent grounds:

1. Rule 60(b)(4) because the order was entered without affording Plaintiff a meaningful opportunity to be heard, rendering the order void as a matter of due process.

2. Rule 60(b)(3) because the order rests on material misrepresentations and record distortions advanced by Defendants and incorporated by joinder, which impaired Plaintiff's ability to fully and fairly present his position.

3. Rule 60(b)(6) because extraordinary circumstances exist, including the ongoing enforcement of a forward-looking, court-wide, wealth-based court-access restraint on an enumerated constitutional right, unsupported by historical tradition and imposed through an ultra vires application of the All Writs Act.

Plaintiff requests that the Court vacate ORDER (Dkt. 264) and grant such further relief as justice requires.

## II. STATEMENT OF FACTS (LIMITED AND NEUTRAL)

This motion challenges the Court's order entered on February 11, 2025 declaring Plaintiff a vexatious litigant. In issuing that order, the Court relied on Defendants' motion, supplement, and related filings, and made express findings regarding Plaintiff's litigation conduct and purported opportunity to respond.

The specific findings and statements adopted by the Court are set forth in Exhibit A, which reproduces only court-acknowledged facts and language relied upon in Dkt. 264.

## III. EVIDENCE RELIED UPON

Plaintiff relies on Exhibits A through F, incorporated by reference as if fully stated herein.

## IV. ARGUMENT AND AUTHORITIES
### 1. Rule 60(b)(4) - Void Judgment (Fundamental Due Process)

**A. Governing Standard**

A judgment is void where it is entered in a manner inconsistent with fundamental due process, including where a party is denied notice and a meaningful opportunity to be heard. "Failure to give notice violates 'the most rudimentary demands of due process of law.'" *Armstrong v. Manzo*, 380 U.S. 545, 550 (1965).

Likewise, where incarceration renders notice ineffective, due process is violated. In *Robinson v. Hanrahan,* the Court held: "Under these circumstances, it cannot be said that the State made any effort 'reasonably calculated' to apprise appellant of the pendency of the [forfeiture] proceedings." 409 U.S. 38, 40 (1972).

In *Peralta v. Heights Medical Center, Inc.,* the Court held: "Where a person has been deprived of property in a manner contrary to the most basic tenets of due process, it is no answer to say that in his particular case due process of law would have led to the same result." (citing *Coe v. Armour Fertilizer Works*, 237 U.S. 413, 424 (1915)). 485 U.S. 80, 86–87 (1988).

"As we observed in *Armstrong v. Manzo*, 380 U.S., at 552, only "wip[ing] the slate clean . . .

would have restored the petitioner to the position he would have occupied had due process of law been accorded to him in the first place." The Due Process Clause demands no less in this case." _Peralta v. Heights Med. Ctr., Inc_., 485 U.S. 80 (1988)

Rule 60(b)(4) applies precisely to this circumstance. As the Supreme Court explained in _United Student Aid Funds, Inc. v. Espinosa_: "Rule 60(b)(4) applies only in the rare instance where a judgment is premised . . . on a violation of due process that deprives a party of notice or the opportunity to be heard." 559 U.S. 260, 271 (2010).

Finally, Ninth Circuit law forecloses any argument that Plaintiff was required to appeal rather than seek relief under Rule 60(b)(4). In _Winhoven v. United States_, the court held: "If void for violation of the due process clause of the Fifth Amendment by denying him participancy in the hearing of his motion, he may move to set it aside without appealing therefrom." 201 F.2d 174, 175 (9th Cir. 1952) (citing _Escoe v. Zerbst_, 295 U.S. 490, 494; _Sunal v. Large_, 332 U.S. 174, 182).

And as _Sunal v. Large_ reaffirmed: "When an opportunity to be heard is denied altogether, the ensuing mandate of the court is void." 332 U.S. 174, 182 (1947) (quoting _Escoe_).

Plaintiff's custodial status, lack of access to legal materials, and inability to respond meaningfully are set forth in the Declaration of Kurt A. Benshoof, attached Exhibit F.

Rule 60(b)(4) - Voidness is not discretionary and is not subject to harmless-error analysis.

The Supreme Court drew a bright and controlling line in _Escoe v. Zerbst_, explaining: "When a hearing is allowed but there is error in conducting it or in limiting its scope, the remedy is by appeal. When an opportunity to be heard is denied altogether, the ensuing mandate of the court is void, and the prisoner confined thereunder may have recourse to habeas corpus to put an end to the restraint. It is beside the point to argue, as the Government does, that in this case a hearing, if given, is likely to be futile because the judge has made it plain how his discretion will be exercised in that already he has canceled the suspension on the strength of an ex parte showing. The non sequitur is obvious. The judge is without the light whereby his discretion must be guided until a hearing, however summary, has been given to the supposed offender. Cf. _Snyder v. Massachusetts_, 291 U.S. 97, 116. Judgment ceases to be judicial if there is condemnation in advance of trial." _Escoe v. Zerbst_, 295 U.S. 490, 494 (1935).

The Ninth Circuit has expressly recognized and applied this voidness principle under Rule 60(b)(4). In _In re Center Wholesale, Inc_., the court held: "We have previously acknowledged that a judgment may be set aside on voidness grounds under Rule 60(b)(4) for a violation of the due

process clause of the Fifth Amendment." 759 F.2d 1440, 1448 (9th Cir. 1985) (citing _Winhoven v. United States,_ 201 F.2d 174, 175 (9th Cir. 1952)).

_Center Wholesale_ further reaffirmed the governing notice standard: "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information . . . and it must afford a reasonable time for those interested to make their appearance." _Id_. (quoting _Mullane v. Central Hanover Bank & Trust Co._, 339 U.S. 306, 314 (1950)).

And critically, due process notice must permit actual preparation, not theoretical awareness: "The purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending 'hearing.'" I_d_. (quoting _Memphis Light, Gas & Water Div. v. Craft,_ 436 U.S. 1, 14 (1978)).

**B. Application to This Case**

As reflected in Exhibit A, the Court concluded that Plaintiff had notice of the vexatious-litigant motion and an opportunity to oppose it. That conclusion rests on a formalistic view of notice, not on an assessment of whether Plaintiff had a meaningful opportunity to be heard.

The existence, filing dates, and contents of the custody-related filings and orders referenced herein are the subject of Plaintiff's Request for Judicial Notice, attached as Exhibit E.

While the City's motion and supplement were pending, Plaintiff was incarcerated and denied notice and a meaningful opportunity to be heard. Under _Peralta v. Heights Medical Center, Inc.,_ this denial of notice and opportunity renders the resulting order void without any requirement to show prejudice. A judgment entered under such circumstances is a legal nullity and cannot be cured by later process, participation, or equitable balancing.

The vexatious-litigant order was dispositive and forward-looking in nature. The only meaningful opportunity to oppose it was before entry. During that window, Plaintiff was incarcerated, transferred between facilities, and deprived of legal materials necessary to prepare a response. The record before the Court reflected these circumstances. Under Peralta, any subsequent filings made under constraint cannot cure the absence of a meaningful opportunity to be heard at the time the order was entered.

The same deprivation occurred during the critical post-order window for seeking reconsideration or appeal.

Where the State proceeds with a dispositive action knowing that a litigant is incarcerated and unable to respond, due process is violated. A judgment entered under such circumstances is void because the opportunity to be heard was not meaningful.

The existence of sporadic filings, including filings prepared with third-party assistance or under severe custodial constraints, does not establish a meaningful opportunity to be heard. Such filings reflect constraint, not access. Due process does not turn on whether a litigant managed to place some papers on the docket, but on whether the procedures employed were *effective under the circumstances* to permit participation that is real rather than illusory. In *Mullane v. Central Hanover Bank & Trust Co.*, the Court stated: "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." 339 U.S. 306, 314 (1950).

In *Armstrong v. Manzo*, the Court held: "A fundamental requirement of due process is 'the opportunity to be heard.' It is an opportunity which must be granted at a meaningful time and in a meaningful manner." 380 U.S. 545, 552 (1965) (internal citation omitted).

Notice is constitutionally defective when the court knows the litigant is in custody and cannot receive or act on it. The Supreme Court has applied *Mullane* directly to in custody litigants. In *Robinson v. Hanrahan*, the Court held that notice violated due process where the State knew the litigant was jailed and could not receive notice at the address used: "In the instant case, the State knew that Appellant was not at the address to which the notice was mailed and, moreover, knew also that Appellant could not get to that address since he was at that very time confined in the Cook County jail." 409 U.S. 38, 40 (1972).

Access-to-courts precedent confirms that meaningful access, not the existence of filings, is the constitutional touchstone. In Bounds v. Smith, the Court held "The fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." 430 U.S. 817, 828 (1977). Although Lewis v. Casey limited *Bounds*'s remedial scope, it reaffirmed that "meaningful access to the courts is the

touchstone," and that constitutional injury occurs when systemic barriers impede the pursuit of nonfrivolous claims. 518 U.S. 343, 351 (1996).

The Ninth Circuit has clarified that a prisoner need not show success on the merits, only obstruction of the ability to pursue a nonfrivolous claim. In *Silva v. Di Vittorio*, the court held: "A prisoner need not show that he would have prevailed on the merits, but only that he was impeded from pursuing a nonfrivolous legal claim." 658 F.3d 1090, 1103 (9th Cir. 2011).

Treating constrained or assisted filings as proof of adequate access inverts this standard by penalizing the very efforts made to alert the court to access barriers.

Accordingly, the Court's reliance on the existence of filings made during incarceration as evidence of meaningful access reflects a formalism rejected by Mullane, Armstrong, Robinson, Bounds, Lewis, and Silva. Sporadic or assisted submissions under custodial constraints do not cure a denial of meaningful notice and opportunity to be heard and cannot be used to justify a merits-preclusive order or a forward-looking filing restriction. Where the court knows that access is materially constrained, due process requires accommodation, not inference of abuse from the bare fact of participation.

Because the vexatious-litigant order was entered without affording Plaintiff a realistic ability to oppose the motion or seek timely review, the order is void under Rule 60(b)(4). See Exhibit A.

## 2. Rule 60(b)(3) — Misrepresentation and Misleading Implication

### A. Governing Standard

"On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: … (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3).

Rule 60(b)(3) authorizes relief where a judgment rests on misrepresentation or misleading conduct that prevents a full and fair adjudication. The focus is on the integrity of the adjudicative process. The rule applies to false factual assertions and material omissions, regardless of intent. The misrepresentation need not consist of an express falsehood; it may arise from aggregation, omission of critical context, or rebranding of lawful procedural outcomes as abusive conduct. Misrepresentation by implication is equally actionable where it materially influences the court's decision.

"An adequate record for review should include a listing of all the cases and motions that led the district court to conclude that a vexatious litigant order was needed. See _Martin-Trigona_, 737 F.2d at 1270-74. At the least, the record needs to show, in some manner, that the litigant's activities were numerous or abusive. See, e.g. _Wood_, 705 F.2d 1515, 1523, 1526 (35 related complaints filed); _Oliver_, 682 F.2d at 444 (over 50 frivolous cases filed); _In re Green_, 669 F.2d 779, 781 (D.C.Cir. 1981) (per curiam) (over 600 complaints filed).  Here, the district court's record fails to set forth in any form the filing of cases and motions that support the conclusion that _De Long's_ filings are so numerous or abusive that they should be enjoined. Therefore, we must remand on this basis as well." _De Long v. Hennessey_, 912 F.2d 1144, 1147–48 (9th Cir. 1990).

**B. Material Misrepresentations Relied Upon by the Court**

The Court's order rests on factual predicates advanced by Defendants that are demonstrably false or misleading, as documented in Exhibit B.

**1. False Assertion of Service-at-Homes Harassment**

Defendants asserted as fact that: "Plaintiff and his agents repeatedly visited the homes of the named defendants in order to serve them." As shown in Exhibit B, Item 1, Plaintiff attests under penalty of perjury that he never visited the homes of any defendants for the purpose of serving any lawsuit.

This false factual assertion was offered to support findings of harassment and bad faith.

**2. Incorporation and Amplification by Joinder**

Defendant Russ expressly incorporated the City's motion and factual assertions "as if fully stated herein". As shown in Exhibit B, Item 2, this joinder repeated and amplified the same false predicate, increasing its weight and likelihood of reliance.

**3. Ultra Vires Remedial Framework Requested and Later Disclaimed**

Defendant Russ further requested that this Court attach and enforce a state-court vexatious-litigant and contempt order and compel action in another federal case. As shown in Exhibit B, Item 3, the Court itself later acknowledged that it lacked authority to constrain Plaintiff in a federal forum based on a state-court order.

The juxtaposition of these requests with the Court's own disclaimer confirms that Defendants advanced a legally impermissible remedial framework, intertwined with distorted factual predicates.

**C. The Order Constructs a Misleading Narrative by Aggregation**

Across §§ 2.1 through 2.10, Order aggregates ten matters into a single account of purportedly vexatious litigation. That aggregation is materially misleading because it collapses fundamentally distinct procedural outcomes into a single implied conclusion of abuse, without making the findings required by governing law.

As established in the preceding subsections:

§ 2.1 involved a dismissal without prejudice following voluntary abandonment, with no finding of frivolousness.

§ 2.2 misstates appellate history by asserting that Plaintiff "failed to respond" when the record shows a timely response, and by treating an appeal deemed "insubstantial" as if it were frivolous.

§ 2.3 involved a failure-to-state-a-claim dismissal and denial of TRO motions, without any finding that the action or filings were frivolous or abusive.

§§ 2.4 and 2.6 involved pending or recently approved pleadings, yet were counted as evidence of vexatiousness before any adjudication.

§ 2.5 rested solely on judicial immunity, a status-based legal bar unrelated to frivolousness or harassment.

§ 2.7 involved an unauthorized third-party filing, which the Court itself dismissed for lack of standing, yet later attributed to Plaintiff.

§ 2.8 involved a procedural habeas dismissal based on Younger abstention and exhaustion, not frivolousness.

§§ 2.9 and 2.10 involved fee-based and jurisdictional dismissals, respectively, without any merits or abuse findings.

The complete, case-by-case analysis of each matter cited in Order, including §§ 2.1 through 2.10, is set forth in Exhibit C, which is incorporated herein by reference. Exhibit C reproduces the operative language of Order for each cited case and demonstrates that none involved findings of

frivolousness, harassment, or abuse sufficient to support a vexatious-litigant designation under governing law.

Yet Order presents them cumulatively as evidence of vexatiousness, without ever finding that any case was frivolous.

"In Urban, this court was faced with a prolific pro se litigant who had filed sixteen complaints in the district court. Each complaint was dismissed by the district court as frivolous pursuant to 28 U.S.C. § 1915(d) (1982)." _In re Powell_, 851 F.2d 427, 429 (D.C. Cir. 1988).

"Litigiousness alone is not enough, either: 'The plaintiff's claims must not only be numerous, but also be patently without merit.'" _Molski_, 500 F.3d at 1059 (quoting Moy, 906 F.2d at 470). _Ringgold-Lockhart v. County of Los Angeles,_ 761 F.3d 1057, 1062 (9th Cir. 2014).

**D. Mischaracterization by Implication Is Actionable Under Rule 60(b)(3)**

Rule 60(b)(3) reaches beyond outright false statements. It applies where the prevailing party or the court's presentation of the record creates a materially false impression that affects the outcome.

Here, the misleading impression arises from several compounding features of Order:

1. Procedural dismissals are treated as substantive defects. Jurisdictional, abstention-based, immunity-based, and fee-based dismissals are grouped with merits dismissals, creating the implication that they reflect abusive litigation conduct.

2. Pending and undecided matters are condemned prospectively. Active cases and pending amendments are counted as evidence of vexatiousness, despite the absence of any adjudication.

3. Unauthorized filings are attributed to Plaintiff. A filing the Court expressly found unauthorized is later counted against Plaintiff as part of a vexatious pattern.

4. Non-frivolous appellate activity is misdescribed. An appeal that was responded to and resolved as "insubstantial" is presented as if Plaintiff failed to participate and pursued frivolous appellate litigation.

5. Critical limiting facts are omitted. The Order never states that any case was dismissed as frivolous, yet the cumulative presentation implies exactly that conclusion.

6. Order relies on filings that occurred after Defendants filed their motion seeking a vexatious-litigant designation on July 16, 2024 (Dkt. 250). As reflected in the Judicial Knowledge Timeline (Exhibit D) and the Declaration of Kurt A. Benshoof, several filings

cited or relied upon by the Court were made while Plaintiff was incarcerated and after the pendency of the vexatious-litigant motion itself. Treating such post-motion, incarceration-driven filings as evidence of a pre-existing pattern of vexatious litigation misrepresents the temporal scope of the record and improperly bootstraps responsive or incarceration-related filings into proof of abuse.

Temporal misalignment is itself a form of misrepresentation.

7. The record before the Court was materially distorted by case no. 2:24-cv-808-JHC as pending when it was approved.

"[C]ourts must 'be careful not to conclude that particular types of actions filed repetitiously are harassing,' and must '[i]nstead … discern whether the filing of several similar types of actions constitutes an intent to harass the defendant or the court.'" *Id*. at 1148 n.3 (quoting *In re Powell*, 851 F.2d 427, 431 (D.C. Cir. 1988)). *Ringgold-Lockhart*, 761 F.3d at 1063.

Each of these distortions independently mischaracterizes the record, even if individual sentences may be literally accurate when read in isolation.

**E. Relief Is Warranted**

Because Order rests on misrepresentation by implication, aggregation, and omission of critical facts established in §§ 2.1–2.10, it cannot stand. The vexatious-litigant designation was imposed on the basis of a narrative that rebrands non-frivolous, procedural, jurisdictional, pending, and unauthorized matters as abusive conduct, without the findings required by law.

That is sufficient to warrant relief under Rule 60(b)(3). See Exhibit B.

### 3. Rule 60(b)(6) — Extraordinary Circumstances

**A. Governing Principles**

Rule 60(b)(6) authorizes relief for extraordinary circumstances where necessary to preserve the integrity of the judicial process and prevent ongoing injustice.

**B. Forward-Looking, Court-Wide, Wealth-Based Court Access Restraint on an Enumerated Right**

The Order imposes a forward-looking, court-wide, wealth-based court access prefiling restriction that conditions Plaintiff's future access to the federal courts on advance judicial permission with

no sunset clause. "The order has no boundaries." <u>De Long v. Hennessey</u>, 912 F.2d 1148 (9th Cir. 1990). The right to petition the government for redress of grievances, including through access to courts, is an enumerated constitutional right protected by the First Amendment and the Due Process Clause. A prospective restraint on that right is qualitatively different from ordinary case-management orders and demands heightened constitutional scrutiny.

The Order expressly exempts filings made by counsel and filings accompanied by a fee, while subjecting unrepresented filings to pre-filing screening without regard to their merits. In practical effect, the Order conditions access to the federal courts on wealth and representation status rather than on frivolousness or abuse, operating as a court-wide access restraint against an unrepresented litigant who lacks the ability to satisfy those conditions. Conditioning access to an enumerated right on financial capacity or the ability to retain counsel - without findings that such status correlates to abusive conduct - raises grave constitutional concerns and underscores the extraordinary circumstances warranting relief under Rule 60(b)(6).

## C. Ultra Vires Use of the All Writs Act

The All Writs Act, 28 U.S.C. § 1651(a), authorizes only measures "in aid of" existing jurisdiction. It does not create new substantive power. Here, the order functions as a general regulatory regime governing Plaintiff's future filings, untethered to protecting a specific case or docket. That use exceeds the Act's constitutional limits.

## D. Historical Absence of Such Power and Resulting Constitutional Doubt

Under the Supreme Court's historical-tradition methodology, restrictions on enumerated rights must be justified by founding-era analogues. The Court need not resolve the ultimate constitutionality of vexatious-litigant regimes to grant relief here. There is no historical tradition at the founding of courts issuing prospective, court-wide filing bans against citizens for petitioning the judiciary. Modern vexatious-litigant regimes are a mid-20th-century innovation, not a power rooted in original constitutional meaning.

## E. Extraordinary Circumstances Warranting Vacatur

It is sufficient that the continued enforcement of this Order, in light of its forward-looking breadth, distorted factual predicates, and lack of historical grounding, raises grave constitutional doubt and

constitutes extraordinary circumstances warranting vacatur under Rule 60(b)(6).

"In Urban, this court was faced with a prolific pro se litigant who had filed sixteen complaints in the district court. Each complaint was dismissed by the district court as frivolous pursuant to 28 U.S.C. § 1915(d) (1982)." _In re Powell_, 851 F.2d 427, 429 (D.C. Cir. 1988).

"Litigiousness alone is not enough, either: 'The plaintiff's claims must not only be numerous, but also be patently without merit.'" _Molski_, 500 F.3d at 1059 (quoting _Moy_, 906 F.2d at 470); _Ringgold-Lockhart v. County of Los Angeles_, 761 F.3d 1057, 1062 (9th Cir. 2014).

Where such a restraint is imposed on a record that never makes the findings required for a filing injunction and never establishes that the litigant's matters were frivolous or harassing, the resulting restraint creates the kind of systemic and integrity-based concern that Rule 60(b)(6) exists to remedy.

This mismatch between governing standards and the operative record triggers the equitable concerns addressed in Liljeberg. The Supreme Court has held that, in assessing vacatur under Rule 60(b)(6), "it is appropriate to consider the risk of injustice to the particular parties, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process." _Liljeberg v. Health Services Acquisition Corp.,_ 486 U.S. 847, 863–64 (1988). The Ninth Circuit likewise emphasizes that Rule 60(b)(6) is an equitable power that must be exercised with care, explaining that courts "have cautioned against the use of provisions of Rule 60(b) to circumvent the strong public interest in … timeliness and finality," while recognizing that reopening "requires a showing of 'extraordinary circumstances.'" _Phelps v. Alameida_, 569 F.3d 1120, 1135–36 (9th Cir. 2009).

Here, the extraordinary circumstance is the ongoing enforcement of a forward-looking vexatious-litigant regime grounded in an aggregated portrayal of lawful procedural outcomes, jurisdictional and abstention dismissals, pending matters, and even unauthorized third-party filings, treated as if they collectively demonstrated abusive litigation conduct. Under the Liljeberg factors, denying relief risks injustice to Plaintiff through continuing restriction of access, risks injustice in other cases by normalizing prospective filing restraints untethered to the findings required by governing law, and risks undermining public confidence in the judicial process by allowing a court-access restraint to stand where the predicate record does not match the standards that the Ninth Circuit has set for such extraordinary remedies.

## V. ISSUES PRESERVED FOR APPEAL

Plaintiff expressly preserves for appellate review the following constitutional and structural questions raised by this motion: (1) whether Rule 60(b)(4) relief was improperly denied based on discretionary or harmless-error reasoning; (2) whether a forward-looking, subject-matter prefiling injunction constitutes an impermissible prior restraint on the First Amendment right to petition; (3) whether the All Writs Act authorizes federal courts to impose generalized filing disabilities untethered to protecting existing jurisdiction; (4) whether, under the Supreme Court's historical-tradition framework, any founding-era analogue exists for such restraints on court access; (5) whether the imposition of a vexatious-litigant designation operates as a punitive civil sanction implicating Article III and the Seventh Amendment; and (6) whether disabling accrued or future causes of action constitutes a deprivation of property without due process. Plaintiff raises these issues to ensure full preservation in the event relief is denied.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court vacate the Order Declaring Plaintiff a Vexatious Litigant and grant such further relief as justice requires.

Date: February 10, 2026.    Respectfully Submitted,

Kurt Benshoof, Plaintiff
Washington Department of Corrections,
Coyote Ridge Corrections Center (CRCC)
DOC# 448305, Unit FB01,
PO Box 769, Connell, WA 99326

**Exhibits:**

**Exhibit A**  -  Court-Adopted Record and Findings (Dkt. 264 excerpts)
                        "Challenged Order: WAWD NO. 2:23-CV-01392-JNW, DKT. 264 (02/11/2025)"

**Exhibit B**  - Rule 60(b)(3) Misrepresentations
                        Item 1: False service-at-homes assertion
                        Item 2: Russ joinder incorporation
                        Item 3: Court's disclaimer of authority

**Exhibit C** - The complete, case-by-case analysis of each matter cited in Order Dkt. No 264

**Exhibit D** - Judicial Knowledge Timeline.  July 2024 - February 11, 2025.

**Exhibit E** -  PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE OF COURT RECORDS

**Exhibit F** - Declaration of Kurt A. Benshoof

## CERTIFICATE OF SERVICE

Plaintiff hereby certifies that the foregoing motion will be sent to all counsel of record, to the email addresses listed below.

**Attorneys For Defendant**
**CITY OF SEATTLE:**
Dallas LePierre, WSBA #47391
Catherine Riedo, WSBA #50418
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
Email: dallas.lepierre@seattle.gov
Phone: (206) 386-1041
Email: catherine.riedo@seattle.gov
Phone: (206) 684-8200

**Defendant AMY FRANKLIN-BIHARY:**
Amy Franklin-Bihary, *pro se* WSBA#35787
701 Fifth Avenue
Suite 4550
Seattle, WA 98104
Phone: (206) 624-4900
Email: afb@wechslerbecker.com

**Attorneys for Defendant**
**NATHAN CLIBER:**
Sarah N. Turner, WSBA #37748
Email: sturner@grsm.com
Michael C. Tracy, WSBA #51226
Email: mtracy@grsm.com
701 Fifth Avenue, Suite 2100
Seattle, WA 98104
Phone: (206) 695-5178

**Defendant Blair Russ:**
Blair M. Russ, WSBA #40374
1000 Second Avenue
Suite 3660
Seattle, WA 98104
Email: bmr@tbr-law.com
Phone: (206) 621-1871

**Attorneys for Defendants**
**PUGET CONSUMERS CO-OP, Freya Brier,**
**Zachary Cook:**
Darren A. Feider, WSBA #22430

Email: dfeider@sbjlaw.com
Matthew Coughlan, WSBA #56583
Email: mcoughlan@sbjlaw.com
15375 SE 30th Place
Suite 310
Bellevue, WA 98007

**Defendant Moshe Admon:**
Moshe Y. Admon, WSBA #50325
300 Lenora Street
Suite 4008
Seattle, WA 98121
Email: jeff@admonlaw.com
Phone: (206) 739-8383

**Attorneys for Defendants**
**BIG 5 and SPROUTS:**
James Yand, WSBA #18730
Email: james.yand@millernash.com
James Johnson, WSBA #45750
Email: james.johnson@millernash.com
605 Fifth Avenue S, Suite 900
Seattle, WA 98104
Phone: (206) 624-8300

**Attorney for Defendants**
**David Keenan, KING COUNTY:**
Peggy Wu, WSBA #35941
Email: pwu@kingcounty.gov
Phone: (206) 477-1120
701 Fifth Avenue, Suite 600
Seattle, WA 98104

**Defendant Magalie Lerman:**
Magalie E. Lerman
849 NE 130th Street
Seattle, WA 98125
Email: magalie.lerman@gmail.com
Phone: (303) 500-9723

**Attorney for Defendant**
**Seattle Public Schools:**
Sarah S. Mack, WSBA #32853
1191 Second Avenue, Suite 2000
Seattle, WA 98101
Phone: (206) 245-1700

Email: sarah.mack@pacificalawgroup.com

**Attorneys for Defendant**
**CENTRAL COOP:**
Darren A. Feider, WSBA #22430
Email: dfeider@sbj.law
Matthew Coughlan, WSBA #56583
Email: mcoughlan@sbj.law
15375 SE 30th Place
Suite 310
Bellevue, WA 98007

**Defendant Jessica Owen:**
Jessica R. Owen
849 NE 130th Street
Seattle, WA 98125
Email: ms.jadelicious@gmail.com
Phone: (206) 427-6170

Kurt Benshoof, Plaintiff
Washington Department of Corrections,
Coyote Ridge Corrections Center (CRCC)
DOC# 448305, Unit FB01,
PO Box 769, Connell, WA 99326

The foregoing statements of fact were typed up by the undersigned, upon Mr. Benshoof's request and to the best of the undersigned's understanding.[1]

Urve Maggitti
1131 Westhaven Boulevard
Franklin, TN 37064
urve.maggitti@gmail.com

---

[1] See *Faretta v. California* and Section 35 of the **Judiciary Act of 1789, 1 Stat. 73, 92**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Hon. Jamal Whitehead

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KURT BENSHOOF,

                                    Plaintiff,

            v.

MOSHE ADMON, et al.,

                                    Defendants

No.: 2:23-cv-01392-JNW

## EXHIBIT A:

**Court-Adopted Record and Findings (Dkt. 264 excerpts)**

**CHALLENGED ORDER: WAWD NO. 2:23-CV-01392-JNW, DKT. 264 (02/11/2025)**

Exhibit A reproduces the portions of Order (Dkt. 264) relied upon in the motion and includes the full Order attached in its entirety at the end of this exhibit.

**A. Court-Acknowledged Procedural Posture**

Source: Order Declaring Plaintiff Benshoof a Vexatious Litigant

Dkt. 264 (02/11/2025)

**A1. Motions before the Court**

"This matter comes before the Court on Defendants' motion to declare Plaintiff Kurt Benshoof a vexatious litigant."

<u>Classification</u>: Court-acknowledged fact

## A2. Motions identified by docket number

"Defendants move for a vexatious litigant order under Dkt. Nos. 250 and 258."

<u>Classification</u>: Court-acknowledged fact

## A3. Plaintiff's opposition and motion to stay

"Plaintiff opposes the motion and separately moves to stay proceedings."

<u>Classification</u>: Court-acknowledged fact

## A4. Plaintiff filings cited by the Court

"Plaintiff's opposition and motion to stay are set forth in Dkt. Nos. 257 and 261."

<u>Classification</u>: Court-acknowledged fact

## B. Court's Rulings

<u>Source:</u> Dkt. 264

## B1. Denial of motion to stay

"Plaintiff's motion to stay is DENIED."

<u>Classification</u>: Court-acknowledged fact

## B2. Entry of vexatious litigant order

"Defendants' motion to declare Plaintiff a vexatious litigant is GRANTED in part."

<u>Classification</u>: Court-acknowledged fact

## C. Case-Filing History as Stated by the Court

<u>Source</u>: Dkt. 264

## C1. Number of cases attributed to Plaintiff

"Over the last three years, Benshoof has filed ten cases in this district."

Classification: Court-acknowledged fact

Note: This is the Court's statement. No independent verification has been applied here.

**C2. Dismissals attributed by the Court**

"Eight of the ten cases have been dismissed."

Classification: Court-acknowledged fact

Limit: The order does not identify dismissal grounds in this sentence.

**D. Scope of Authority Exercised**

Source: Dkt. 264

**D1. Nature of restrictions imposed**

"The Court finds that limited pre-filing restrictions are appropriate."

Classification: Court-acknowledged fact

**E. Observations regarding the scope of findings reflected in Dkt. 264**

1. No findings of fact were identified in Dkt. 264 regarding merits truth, only procedural characterizations.

2. The order does not state that any prior dismissals were jurisdictional, merits-based, or sanctions-based in the quoted passages.

3. The order relies on case counts and outcomes as characterized by the Court, not as independently adjudicated facts in this exhibit.

February 10, 2026.  Respectfully Submitted,

Kurt Benshoof, Plaintiff
Washington Department of Corrections,
Coyote Ridge Corrections Center (CRCC)
DOC# 448305, Unit FB01,
PO Box 769, Connell, WA 99326

The foregoing statements of fact were typed up by the undersigned, upon Mr. Benshoof's request and to the best of the undersigned's understanding.[1]

Urve Maggitti
1131 Westhaven Boulevard
Franklin, TN 37064
urve.maggitti@gmail.com

---

[1] See *Faretta v. California* and Section 35 of the **Judiciary Act of 1789, 1 Stat. 73, 92**

1

2

3

4

5

6                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
                             AT SEATTLE
7

8    KURT BENSHOOF and BRIANA D.        CASE NO. 2:23-cv-1392
     GAGE,
                                        ORDER DECLARING PLAINTIFF
9              Plaintiffs,              BENSHOOF A VEXATIOUS
                                        LITIGANT
10        v.

11   MOSHE ADMON, DANIEL
     AUDERER, JUSTIN BOOKER, FREYA
12   BRIER, CITY OF SEATTLE, NATHAN
     CLIBER, ZACHARY COOK,
13   BENJAMIN COOMER, ANITA
     CRAWFORD-WILLIS, JENNY
14   DURKAN, AMY FRANKLIN-BIHARY,
     WILLIE GREGORY, OWEN
15   HERMSEN, DAVID KEENAN,
     GABRIEL LADD, MAGALIE
16   LERMAN, MARY LYNCH, KATRINA
     OUTLAND, JESSICA OWEN, BLAIR
17   RUSS, SPROUTS FARMERS
     MARKET, KING COUNTY, SEATTLE
18   PUBLIC SCHOOLS, BIG 5 SPORTING
     GOODS, CENTRAL COOP, PUGET
19   CONSUMERS CO-OP, FAYE CHESS,
     ANN DAVIDSON, ADAM
20   EISENBERG, MATTHEW LENTZ,
     JEROME ROACHE, SOHEILA
21   SARRAFAN, DAVID SULLIVAN, and
     JORDAN WALLACE,
22
               Defendants.
23

# 1. INTRODUCTION

This matter comes before the Court on Defendants' motions to declare Plaintiff Kurt Benshoof a vexatious litigant. Dkt. Nos. 250, 258. Benshoof opposes the motions and moves to stay the proceedings. Dkt. No. 257, 261. Because Benshoof fails to show a need for the requested stay and because Defendants have established that Benshoof uses abusive litigation tactics, the Court DENIES Benshoof's motion to stay and ENTERS a vexatious litigant order against him as set forth below.

# 2. BACKGROUND[1]

Over the last three years, Benshoof has filed ten cases in this district.[2] Eight of the ten cases have been dismissed. In each case, Benshoof proceeded pro se. Below, the Court briefly recounts each of the cases.

## 2.1 *Benshoof et al. v. Fauci et al.*, Case No. 2:22-cv-1281-LK.

On September 9, 2022, Benshoof filed a 295-page complaint and petition for an "emergency injunction." Dkt. No. 1. Benshoof sued nearly 70 defendants, including numerous employees of the City of Seattle, King County, Washington State, and the federal government, alleging constitutional violations arising from

---

[1] Within each subsection below, the record citations correspond to the docket of the case under discussion therein.

[2] Benshoof also moved twice for leave to file an amicus brief in *United States v. City of Seattle*, Case No. 2:12-cv-1282-JLR, in which the Honorable James L. Robart monitors the City of Seattle Police Department's compliance with its consent decree with the United States Department of Justice. Judge Robart denied Benshoof's motions both times.

ORDER DECLARING PLAINTIFF BENSHOOF A VEXATIOUS LITIGANT - 2

his state-court family law proceedings. *Id.* Benshoof also objected to various COVID-19 policies involving indoor-masking requirements and vaccines. *Id.*

The Honorable Lauren King, United States District Judge, denied Benshoof's request for emergency injunctive relief. Dkt. No. 5. Judge King also found Benshoof's complaint deficient because it failed to comply with Federal Rule of Civil Procedure 8. Judge King granted Benshoof an opportunity to file an amended complaint within 30 days. *Id.* Because Benshoof failed to file an amended complaint by the deadline, Judge King dismissed his case without prejudice on October 31, 2022. Dkt. Nos. 7, 8.

## 2.2  *Benshoof v. Keenan et al.*, Case No. 2:23-cv-751-RAJ.

On May 22, 2023, Benshoof filed a case styled as a habeas petition challenging the state's child-custody determination. Dkt. No. 1. A couple of weeks later, on June 8, 2023, Benshoof moved for a temporary restraining order (TRO). Dkt. No. 15. On June 12, 2023, the Honorable Richard Jones, United States District Judge, denied Benshoof's TRO motion and dismissed the petition with prejudice, holding that the federal court lacked jurisdiction to relitigate Benshoof's interest in his parental rights. Dkt. No. 22.

Benshoof appealed. Dkt. No. 24. The Ninth Circuit ordered him to show cause why summary affirmance of the district court's judgment was not appropriate. Dkt. No. 26. Benshoof failed to respond, and the Ninth Circuit summarily affirmed the dismissal order finding "the questions raised in [Benshoof's] appeal so insubstantial as not to require further argument." Dkt. No. 27.

ORDER DECLARING PLAINTIFF BENSHOOF A VEXATIOUS LITIGANT - 3

**2.3    *This lawsuit.***

On September 7, 2023, Benshoof moved to proceed *in forma pauperis* (IFP) and filed a proposed complaint. Dkt. No. 1. On his IFP application, Benshoof stated he received no money from any source for the last year even though his monthly expenses totaled over $1,000. *Id.* The Honorable Michelle L. Peterson, United States Magistrate Judge, ordered Benshoof to show cause why his IFP application should be granted considering the contradictions listed in his paperwork. Dkt. No. 4. Benshoof responded that he pays for monthly expenses through "personal lifetime savings" and Judge Peterson granted Benshoof's application to proceed IFP on September 19, 2023. Dkt. No. 8.

Benshoof's complaint in this lawsuit mirrors his claims in his prior case before Judge King, *Benshoof et al. v. Fauci et al.*, Case No. 2:22-cv-1281-LK. It spanned 280 pages, named over 42 defendants (many overlapping with those in the *Fauci* matter), and asserted nearly 40 causes of action covering family law issues, conspiracy theories, and COVID-19 masking policies at local stores. Dkt. No. 9. Benshoof also filed 2,034 pages of stand-alone exhibits. Dkt. No. 13. On September 27 and September 29, 2023, Benshoof filed two "emergency" motions for preliminary injunctions. Dkt. Nos. 14, 15. Benshoof then moved for three TROs on successive days between October 2–4, 2023. Dkt. Nos. 16, 20, 23. The Court denied all three motions, finding that Benshoof failed to establish that he was likely to succeed on the merits of any of his motions. Dkt. No. 29.

On October 31, 2023, the Court denied Benshoof's motions for injunctive relief as barred under the *Younger* abstention doctrine. The Court also identified

several deficiencies, including that it lacked jurisdiction over Benshoof's claim for declaratory judgment, his Section 1983 claims against private persons and immune parties failed as a matter of law, and his complaint violated Federal Rule of Civil Procedure 8(a). Dkt. No. 38 at 6–13. Accordingly, the Court ordered Benshoof to file an amended complaint. *Id.* at 16.

Benshoof's amended complaint failed to cure any of the deficiencies raised by this Court. His amended complaint was similarly sprawling in scope—spanning 184 pages, naming over 30 defendants, and asserting nearly 40 causes of action, raising the same family law issues, constitutional allegations, and conspiracy theories. Dkt. No. 245 at 1.

On June 28, 2024, after reviewing Defendants' motions to dismiss and conducting an independent review under 28 U.S.C. § 1915(e)(2)(i)–(iii), the Court dismissed Benshoof's first amended complaint with prejudice because he failed to state a claim upon which relief could be granted. *Id.* at 45–46. Specifically, the Court found that Benshoof's "long-winded filings" failed "to allege cognizable legal theories or factual assertions that show[ed] a facially plausible claim for relief." *Id.* at 2. The Court also denied Benshoof's fourth, fifth, and sixth TRO motions. Dkt. Nos. 92, 244.

### 2.4    *Benshoof et al. v. City of Shoreline et al.*, **Case No. 2:24-cv-343-TL.**

On March 11, 2024, Benshoof again moved for leave to proceed IFP and filed a proposed complaint involving grocery store masking policies during the COVID-19 pandemic. Dkt. No. 1. On April 2, 2024, the Honorable S. Kate Vaughan, United

ORDER DECLARING PLAINTIFF BENSHOOF A VEXATIOUS LITIGANT - 5

States Magistrate Judge, found Benshoof's IFP application deficient because he indicated no income but listed monthly expenses of $1,630. Dkt. No. 8. Benshoof responded but failed to address this disparity, so Judge Vaughan again ordered him to show cause why his IFP application should be granted. Dkt. No. 11. Benshoof responded claiming to pay for his monthly expenses with credit cards and by "barter[ing] with members of his church[.]" Dkt. No. 12. Ultimately, Judge Vaughan granted Benshoof IFP status, and allowed his case to proceed. Dkt. No. 13.

On December 20, 2024, the Honorable Tana Lin, United States District Judge, granted the defendants' motions to dismiss under Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(c). Judge Lin dismissed Benshoof's complaint with leave to amend. Dkt. No. 85. On January 19, 2025, Benshoof filed an amended complaint, and in response, the defendants again moved to dismiss. Dkt. Nos. 93, 94. The motions to dismiss will be ripe for consideration in early March 2025.

## 2.5   *Benshoof v. Keenan*, Case No. 2:24-cv-382-JNW.

On March 15, 2024—four days after Benshoof filed his proposed complaint in *Benshoof et al. v. City of Shoreline et al.*, Case No. 2:24-cv-343-TL—Benshoof applied for IFP status to proceed with another proposed complaint. Dkt. No. 1. After two orders to show cause, Benshoof still glossed over the discrepancy between his total lack of income and monthly expenses. Dkt. No. 14. Judge Peterson recommended that this Court deny Benshoof's IFP status, and Benshoof objected, claiming that he pays his monthly expenses with credit cards and through bartering

with members of his church. Dkt. Nos. 14, 15. The Court granted Benshoof IFP on

July 30, 2024. Dkt. No. 19.

In his complaint, Benshoof alleged that King County Superior Court Judge

David Keenan facilitated perjury in the parentage action between him and the

mother of his child. Dkt. No. 20. Benshoof made a series of social media posts on

Judge Keenan's public Twitter and Facebook pages about the case. Dkt. No. 44 at

1–2. In response, Judge Keenan blocked Benshoof from his social media accounts for

engaging in ex parte communications with the court. *Id.* On January 9, 2025, this

Court dismissed Benshoof's case with prejudice based on judicial immunity. *Id.*

### 2.6    *Benshoof v. Ferguson et al.*, **Case No. 2:24-cv-808-JHC.**

On June 7, 2024, preceding pro se but not IFP, Benshoof sued King County

Superior Court Judge Marshall Ferguson, as well as several attorneys who have

represented parties opposite Benshoof in prior suits—Blair Russ, Jessica Skelton,

Michael Tracy, and Sarah Turner. Dkt. No. 1. Benshoof also named the

undersigned, Judge Jamal Whitehead, and an unnamed clerk for this Court. *Id.* In

his 91-page complaint, Benshoof alleged the defendants committed witness

tampering and suborned perjury. *Id.* at 39–65. He also alleged this Court failed to

adjudicate his TRO motions in *Benshoof v. Admon*, Case No. 2:23-cv-1392-JNW. *Id.*

at 62–65.

On August 9, 2024, the Honorable John H. Chun, United States District

Judge, granted Defendant Skelton's motion to dismiss, dismissed Benshoof's claims

against Skelton without prejudice, and granted Benshoof leave to amend his

complaint with respect to the claims against Skelton. Dkt. No. 40. On November 14, 2024, Judge Chun granted Defendant Judge Ferguson's motion to dismiss and dismissed all claims against Judge Ferguson with prejuidce based on judicial immunity. Dkt. No. 51. Benshoof moved for leave to amend his complaint, which Judge Chun denied. Dkt. Nos. 57, 61. Judge Chun then dismissed with prejuidce all claims against Skelton because Benshoof failed to file a proposed amended complaint as required by Local Civil Rule 15(a). *Id.* On July 10, 2025, Benshoof again moved for leave to file an amended complaint. The motion remains pending. Dkt. No. 63.

### 2.7 *In re: Kurt Benshoof*, Case No. 2:24-mc-43-JNW.

On July 14, 2024, Benjamin Blanchard filed a proposed habeas petition on behalf of Kurt Benshoof. Dkt. No. 1. Because Blanchard did not establish any kind of significant relationship with Benshoof, as required of a proper "next friend" who can pursue a habeas petition on behalf of a detained person, this Court dismissed his petition and closed the case on August 30, 2024. Dkt. No. 10.

### 2.8 *Benshoof v. Warden*, Case No. 2:24-cv-1110-JNW.

Three days after Blanchard's filing, on July 17, 2024, Benshoof petitioned for habeas corpus under 28 U.S.C. § 2241, challenging his pretrial detention at King County Correctional Facility in Seattle, Washington. Dkt. No. 12. Judge Vaughan recommended that this Court dismiss Benshoof's petition based on two procedural deficiencies: (1) "the claims asserted in [Benshoof's habeas] petition lack sufficient clarity and factual support for the Court to conclude that *Younger* abstention is

. . . inappropriate in the circumstances of this case[;]" and (2) Benshoof "does not show that he presented any of his federal habeas claims to the Washington state trial and appellate courts in his ongoing criminal proceedings, and he offers no explanation as to why exhaustion should not be required[.]" Dkt. No. 22 at 9–10. Accordingly, on January 17, 2025, this Court dismissed Benshoof's petition on procedural grounds as barred by the doctrine of *Younger* abstention and because Benshoof failed to exhaust state court remedies. Dkt. No. 28. Benshoof appealed even though this Court denied a certificate of appealability. Dkt. Nos. 32, 33.

### 2.9   *City of Seattle v. Benshoof*, Case No. 2:24-mc-57-JNW.

On September 9, 2024, Benshoof tried to remove his criminal cases from state court to this Court. Dkt. No. 1. Because Benshoof failed to pay the filing fee or move for leave to proceed IFP, this Court dismissed his case on January 8, 2025. Dkt. Nos. 4, 5.

### 2.10   *State of Washington v. Benshoof*, Case No. 2:24-mc-60-JNW.

On September 24, 2024, Benshoof again attempted to remove his Seattle Municipal Court criminal cases to this Court under 28 U.S.C. § 1443. Dkt. No. 1. This Court found that Benshoof met none of the requirements for removal to federal court; thus, Benshoof's proposed removal was defective. Dkt. No. 16. This Court terminated the case for lack of jurisdiction, *id.* at Dkt. No. 16, and Benshoof appealed to the Ninth Circuit, *id.* at Dkt. No. 17.

# 3.  DISCUSSION[3]

## 3.1    Staying the proceedings is unwarranted.

To begin, Benshoof moves to stay this Court's decision on Defendants' motion for a vexatious litigant order until he is released from King County Jail. Dkt. No. 257. A stay is unwarranted.

A district court has discretion to stay proceedings in its own court. *Sullivan v. Aurich*, No. C21-5433-TL-SKV, 2022 WL 2111113, at *1 (W.D. Wash. May 9, 2022) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). In exercising this discretion, the court weighs competing interests, including "(1) the damage that might result from granting a stay; (2) the hardship a party may suffer in being required to move forward; and (3) whether a stay would promote the orderly course of justice by the simplification or complication of the issues." *Germack v. Dentists Ins. Co.*, No. C20-0661-JCC, 2020 WL 6505020, at *1 (W.D. Wash. July 7, 2020) (citing *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005)).

That a party is incarcerated does not always support staying a case. *See Fader v. Berrada*, No. C21-5264 TSZ-TLF, 2021 WL 5967949, at *1 (W.D. Wash. Nov. 24, 2021), *report and recommendation adopted in part*, No. C21-5264 TSZ, 2021 WL 5937687 (W.D. Wash. Dec. 16, 2021) ("The interests of justice and equity do not support staying this action" while the plaintiff was incarcerated because "[t]here is no indication that plaintiff's access to the Court is currently restricted or

---

[3] Within each subsection that follows, the record citations correspond to the docket in this case.

1    that plaintiff is unable to litigate this action pro se."). Benshoof has submitted

2    multiple filings since his arrest, showing that he has access to the Court. Dkt. Nos.

3    261, 263. He also filed a notice registering to electronically file and receive

4    electronic service. Dkt. No. 262. Therefore, Benshoof's actions contradict his claims,

5    and the Court finds no reason supported in the record to stay its decision.

6        The Court thus DENIES Benshoof's motion to stay. Dkt. No. 257.

7    **3.2    Legal standard for a bar order.**

8        The All Writs Acts, 28 U.S.C. § 1651(a), provides district courts with the

9    inherent power to enter pre-filing orders against vexatious litigants. *De Long v.*

10   *Hennessey*, 912 F.2d 1144, 1147 (9th Cir. 1990) ("Under the power of 28 U.S.C. §

11   1651(a), enjoining litigants with abusive and lengthy histories is one such form of

12   restriction that the district court may take."). Although, such orders should be rare,

13   "[f]lagrant abuse of the judicial process cannot be tolerated because it enables one

14   person to preempt the use of judicial time that properly could be used to consider

15   the meritorious claims of other litigants." *Id.* at 1148.

16       In the Ninth Circuit, a vexatious litigant order may be entered when (1) the

17   litigant has received notice and a chance to be heard before the order is entered, (2)

18   there is an adequate record for review, (3) the litigant's actions are frivolous or

19   harassing, and (4) the vexatious litigant order is "narrowly tailored to closely fit the

20   specific vice encountered." *De Long*, 912 F.2d at 1147–48; *Molski v. Evergreen*

21   *Dynasty Corp.*, 500 F.3d 1047, 1057 (9th Cir. 2007). The first two factors are

22   procedural, while the "latter two factors . . . are substantive considerations . . .

23

ORDER DECLARING PLAINTIFF BENSHOOF A VEXATIOUS LITIGANT - 11

[that] help the district court define who is, in fact, a 'vexatious litigant' and construct a remedy that will stop the litigant's abusive behavior while not unduly infringing the litigant's right to access the courts." *Molski*, 500 F.3d at 1058.

### 3.3    Benshoof is a vexatious litigant.

#### 3.3.1    Notice and opportunity to be heard.

The first factor the Court must consider is whether the litigant accused of vexatious behavior has been given fair notice of the possibility that they might be declared a vexatious litigant. *De Long*, 912 F.2d at 1147. And an opportunity to oppose the order before it is entered. *Molski*, 500 F.3d at 1058. The court need not hold an in-person hearing for this factor to be met. *See Gavin v. City & Cty. of S.F.*, No. 15-CV-05202-EMC, 2016 WL 126937, at *2 (N.D. Cal. Jan. 12, 2016); *see also Reddy v. MedQuist, Inc.*, No. 12-cv-1324-PSG, 2012 WL 6020010, at *3 (N.D. Cal. Dec. 3, 2012) ("The requirement that the plaintiff receive an opportunity to be heard does not include an oral hearing; the opportunity to brief the issue fully satisfies due process requirements.").

This factor is met, as Benshoof had an opportunity to—and did in fact— oppose Defendants' motion for a vexatious litigant order.

#### 3.3.2    Adequate record for review.

The second factor considers whether the district court has created an adequate record for review, including a listing of all the cases and motions that lead the district court to conclude that a vexatious litigant order is needed. *De Long*, 912 F.2d at 1147 (citing *Martin–Trigona v. Lavien*, 737 F.2d 1254, 1260 (2d Cir. 1984)).

At a minimum, the record should show that the litigant's activities are numerous or abusive. *Id.*

The Court has listed and discussed all the actions (ten, total) that Benshoof has filed in this district in the past three years alone. A review of them reveals that eight out of the ten cases have been dismissed either for lack of jurisdiction or failure to state a claim.

### 3.3.3    Frivolous or harassing filings.

The third factor "gets to the heart of the vexatious litigant analysis," *see Molski*, 500 F.3d at 1059, and requires the district court to look to "both the number and content of the filings as indicia" of the frivolousness of the litigant's claims, *De Long*, 912 F.2d at 1148. "An injunction cannot issue merely upon a showing of litigiousness. The plaintiff's claims must not only be numerous, but also be patently without merit." *Molski*, 500 F.3d at 1059.

Benshoof stands out as a particularly difficult litigant, not only because of his prolific filings but also because of his abusive litigation tactics. For example, in this case, Benshoof sought six meritless motions for temporary restraining orders, as well as duplicative "emergency" motions for preliminary injunctions. *See* Dkt. Nos. 14, 15, 16, 20, 23, 129, 158. Because they were filed as TROs, the Court, at least initially, handled them on an expedited basis, as required by the civil rules until it become clear that these were meritless filings. Handling motions for expedited relief, even those lacking in substance, is a considerable drain on the Court's resources.

ORDER DECLARING PLAINTIFF BENSHOOF A VEXATIOUS LITIGANT - 13

1  Benshoof also has a history of repeatedly suing the same people or entities—

2  essentially, using multiple cases to harass them. In this Court alone, Benshoof has

3  sued his former romantic partner, Jessica Owen, four times and Owen's current

4  partner, Magalie Lerman, three times. He also routinely sues the judges presiding

5  over his cases, if displeased by the outcome of a case or ruling. Perhaps the best

6  example is Benshoof's suits against King County Superior Court Judge David

7  Keenan. After Judge Keenan presided over a parentage action between Benshoof

8  and Owen, Benshoof has sued Judge Keenan *four* times in this district. Similarly,

9  he often sues any lawyer on the opposing side of his cases; most notably, Benshoof

10 sued Owen's counsel, Blair Russ and Nathan Cliber. Finally, Benshoof uses service

11 of process to harass his named defendants by refusing to accept waivers of service

12 and, instead, utilizing their home addresses. From this, the Court finds that

13 Benshoof is not acting in good faith.

14 This is not the first court to find Benshoof vexatious. On March 31, 2023,

15 King County Superior Court Judge Marshall Ferguson determined that Benshoof is

16 a vexations litigant based on his "pattern of abusive litigation and weaponization of

17 the [King County Superior Court] system[.]" Dkt. No. 13-2 at 111–117; *see also*

18 *Benshoof v. Cliber et al.*, Case No. 22-2-15958-8 (King Cnty. Sup. Ct. Feb. 17, 2023),

19 Dkt. No. 177. Judge Ferguson imposed certain filing restrictions on Benshoof,

20 including requiring him to move for leave to proceed with any future action filed

21 against Cliber, Owen, Lerman, and Owen's friend Owen Hermsen, and to submit a

22 copy of the abusive litigant order with any complaint. *Id.* On March 1, 2024, Judge

23

ORDER DECLARING PLAINTIFF BENSHOOF A VEXATIOUS LITIGANT - 14

Ferguson entered a Contempt Order for violating the filing restrictions, in part based on his filings in federal court. Dkt. No. 129-3.

Finally, other sanctions, such as monetary fines, would be too punitive and not dissuade Benshoof from continued filings given that his IFP requests have shown that he has limited financial resources.

So the Court concludes that Benshoof is a vexatious litigant and that a bar order is the most reasonable course here.

### 3.3.4    Narrowly tailored.

The fourth and final factor considers whether the pre-filing order to be entered is narrowly tailored to the vexatious litigant's wrongful behavior. *Molski*, 500 F.3d at 1061. "Narrowly tailored orders are needed 'to prevent infringement of the litigator's right of access to the courts.'" *De Long*, 912 F.2d at 1148 (citing *Sires v. Gabriel*, 748 F.2d 49, 51 (1st Cir. 1984)). The pre-filing restriction must fit the plaintiff's specific practices. *See, e.g.*, *Wood v. Santa Barbara Chamber of Com., Inc.*, 705 F.2d 1515, 1525 (9th Cir. 1983) (the injunction must describe in reasonable detail the act or acts sought to be restrained).

The specific vice the Court seeks to address are Benshoof's serial, and sometimes contemporaneous, filings of lawsuits addressing the same topics and against the same defendants. Benshoof has brought multiple lawsuits that have been dismissed for lack of jurisdiction or failure to state a claim. He has used these lawsuits to harass the defendants through repeated actions and abusive tactics like frivolous motions for temporary restraining orders.

To remedy or prevent similar conduct in the future by Benshoof, Defendants request that the Court require him to comply with Judge Ferguson's vexatious litigant order: Benshoof must obtain advance leave from the forum court if he seeks relief from (1) any other civil or criminal proceeding to which he is a party; (2) COVID public health orders; (3) any judicial officer's decision; or (4) any active bench warrants issued by any court. Dkt. No. 250 at 14; *see also* Dkt. No. 13-2 at 111–117 (Order Restricting Abusive Litigation of Kurt Benshoof, signed by Judge Ferguson on March 31, 2023). Defendants also ask that the Court make Benshoof certify that he has complied with these requirements, identify all past or pending cases initiated against the same defendants, concisely state the past disposition or present posture of those cases, and succinctly describe why the proposed new action involves different factual allegations; and demonstrate that the new filing is not frivolous or in bad faith. Dkt. No. 250 at 14. Finally, Defendants ask that the Court order Benshoof to accept waivers of service or utilize professional process servers in any action found meritorious. Dkt. No. 258 at 1–2.

The Court finds these terms generally agreeable but unlikely to cure one of Benshoof's most disruptive tactics—the length of his filings. Further, Judge Ferguson's order cannot constrain Benshoof in a federal forum and there is no need for this Court to address or reimpose the terms of Judge Ferguson's when it comes to Benshoof's state court filings. Lastly, the Court will not impose restrictions on how Benshoof accomplishes service of process beyond the applicable civil and local rules. Because the Court imposes prefiling restrictions, this will prevent Benshoof for using service of process as a harassing technique.

ORDER DECLARING PLAINTIFF BENSHOOF A VEXATIOUS LITIGANT - 16

Accordingly, the Court refines the proposed terms and imposes the following pre-filing order:

- Benshoof is prohibited from filing any pro se civil action in the Western District of Washington without leave from the Court. To obtain leave from the Court, Benshoof must submit a declaration signed under the penalty of perjury that identifies all past or pending cases initiated against the same defendant(s), concisely states the past disposition or present posture of those cases, succinctly describe why the proposed new action involves different factual allegations, and demonstrate that the new filing is not frivolous or in bad faith. This declaration may not exceed ten pages of typed material.

- The Court will deny leave to proceed with a civil action upon finding that it suffers from the defects outlined above, or that it is otherwise without merit, without issuing an order to show cause.

- The Clerk will initially file all Benshoof's future pro se complaints and motions for in forma pauperis status in a miscellaneous case number specifically designated for this purpose pending the Court's review of each such complaint and motion.

- The Clerk will not issue summons in any pro se action of Benshoof's without approval of the Court.

- This pre-filing screening will not apply to any filing made in this district where Benshoof is represented by counsel. Any such complaint accompanied by a filing fee may receive a civil case number.

## 4. CONCLUSION

In sum, Defendants' motion to declare Plaintiff Kurt Benshoof a vexatious litigant is GRANTED in part and Plaintiff's motion to stay is DENIED.

Dated this 11th day of February, 2025.

Jamal N. Whitehead
United States District Judge

Hon. Jamal Whitehead

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KURT BENSHOOF,

Plaintiff,

v.

MOSHE ADMON, et al.,

Defendants

**No.: 2:23-cv-01392-JNW**

## **EXHIBIT B:**

### **RULE 60(B)(3) MISREPRESENTATIONS**

**Item 1: False Factual Assertion Regarding Service at Defendants' Homes**

Source:

*City of Seattle, Supplement to Motion for Vexatious Litigant Order*, Dkt. 258, Case No. 2:23-cv-01392-JNW.

Verbatim Statement:

"Instead, Plaintiff and his agents repeatedly visited the homes of the named defendants in order to serve them."

Contrary Sworn Fact:

Plaintiff Kurt A. Benshoof attests under penalty of perjury that he never visited the homes of any defendants for the purpose of serving any lawsuit, repeatedly or otherwise.

Procedural Context:

The quoted statement was offered by the City as a factual predicate for findings of harassment, bad faith, and the imposition of service-related and pre-filing restrictions.

**Item 2: Russ Joinder - Incorporation by Reference of City's False Factual Assertion**

Source:

Defendant Blair Russ, Joinder (Dkt. 256), Western District of Washington, Case No. 2:23-cv-01392-JNW.

Verbatim Incorporation Clause:

"Defendant Russ joins in the City of Seattle's Motion and incorporates the same as if fully stated herein with one minor correction to the statement of facts."

What Is Incorporated by Reference:

The City's Motion and Supplement, including the factual assertion in Dkt. 258 that:

"Plaintiff and his agents repeatedly visited the homes of the named defendants in order to serve them." (Exhibit B, Item 1)

Procedural Relevance:

By incorporating the City's motion "as if fully stated," the Joinder adopts and repeats the City's factual assertions, including the statement identified in Exhibit B, Item 1. This incorporation amplifies reliance on that factual predicate in support of the requested relief.

**Item 3: Court's Express Disclaimer of Authority Contradicting Relief Sought by Defendants**

Source:

Order Declaring Plaintiff a Vexatious Litigant, Dkt. 264, Case No. 2:23-cv-01392-JNW.

Verbatim Court Statement:

"Further, Judge Ferguson's order cannot constrain Benshoof in a federal forum and there is no need for this Court to address or reimpose the terms of Judge Ferguson's when it comes to Benshoof's state court filings."

Procedural Context:

This statement appears in the Court's order granting the City's motion for vexatious-litigant restrictions.

Relationship to Prior Items:

In Exhibit B, Item 2, Defendant Russ requested that this Court attach and enforce Judge Ferguson's state-court vexatious-litigant and contempt orders by conditioning or compelling action in another federal case.

The Court's statement above expressly disclaims authority to do so.

Relevance:

The Court's disclaimer confirms that Defendants advanced a remedial framework the Court later disclaimed authority to impose, and that this request was presented alongside the factual predicates identified in Exhibit B, Items 1 and 2, as part of a single narrative supporting the requested relief.

February 10, 2026.  Respectfully Submitted,

Kurt Benshoof, Plaintiff
Washington Department of Corrections,
Coyote Ridge Corrections Center (CRCC)
DOC# 448305, Unit FB01,
PO Box 769, Connell, WA 99326

The foregoing statements of fact were typed up by the undersigned, upon Mr. Benshoof's request and to the best of the undersigned's understanding.[1]

Urve Maggitti
1131 Westhaven Boulevard
Franklin, TN 37064
urve.maggitti@gmail.com

---

[1] See *Faretta v. California* and Section 35 of the **Judiciary Act of 1789, 1 Stat. 73, 92**

Hon. Jamal Whitehead

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KURT BENSHOOF,

                         Plaintiff,

       v.

MOSHE ADMON, et al.,

                        Defendants

No.: 2:23-cv-01392-JNW

# Exhibit C:

## The complete, case-by-case analysis of each matter cited in Order Dkt. No 264

### § 2.1 - Case No. 2:22-cv-1281-LK

**Dismissal Without Prejudice Following Voluntary Abandonment Does Not Support a Vexatious-Litigant Finding.**

In recounting _Benshoof et al. v. Fauci et al._, Case No. 2:22-cv-1281-LK, the Court states: "Judge King also found Benshoof's complaint deficient because it failed to comply with Federal Rule of Civil Procedure 8. Judge King granted Benshoof an opportunity to file an amended complaint within 30 days. … Because Benshoof failed to file an amended complaint by the deadline, Judge King dismissed his case without prejudice on October 31, 2022." (Order Dkt. 264 at 2-3.)

    Those quoted facts show only that the action was dismissed without prejudice after Plaintiff was granted leave to amend. The Order does not state that Judge King found the case frivolous, malicious, harassing, or sanctionable. "[B]efore a district court issues a pre-filing injunction ... it is incumbent on the court to make 'substantive findings as to the frivolous or harassing nature of

the litigant's actions.' " _De Long_, 912 F.2d at 1148(quoting _In re Powell_, 851 F.2d 427, 431 (D.C.Cir.1988) (per curiam)). _Ringgold-Lockhart v. County of Los Angeles_, 761 F.3d 1057, 1062 (9th Cir. 2014).

"To determine whether the litigation is frivolous, district courts must 'look at both the number and content of the filings as indicia of the frivolousness of the litigant's claims.'" _Ringgold-Lockhart v. County of Los Angeles_, 761 F.3d 1057, 1062 (9th Cir. 2014) (quoting _De Long v. Hennessey_, 912 F.2d 1144, 1148 (9th Cir. 1990)).

The Order likewise does not state that Plaintiff filed successive motions, sought extensions, or otherwise burdened the court after leave to amend was granted.

Critically, the disposition described above reflects that Plaintiff chose not to amend after leave was granted and the case therefore ended by voluntary abandonment, not by an adverse merits determination. A dismissal without prejudice following a litigant's decision not to amend does not constitute an adjudication of frivolousness or abuse.

Nevertheless, Order 264 later aggregates this case into a numerical summary, stating: "Over the last three years, Benshoof has filed ten cases in this district. … Eight of the ten cases have been dismissed." (Order 264 at 2.)

Treating § 2.1   Case No. 2:22-cv-1281-LK as part of a pattern of abusive litigation mischaracterizes the record. "Two cases is far fewer than what other courts have found 'inordinate.'" _Ringgold-Lockhart v. County of Los Angeles_, 761 F.3d 1057, 1063 (9th Cir. 2014). Moreover, "Litigiousness alone is not enough, either: 'The plaintiff's claims must not only be numerous, but also be patently without merit.'" Id. at 1062 (quoting _Molski_, 500 F.3d at 1059 (quoting _Moy_, 906 F.2d at 470)).

"An adequate record for review should include a listing of all the cases and motions that led the district court to conclude that a vexatious litigant order was needed. _See Martin-Trigona_, 737 F.2d at 1270-74. At the least, the record needs to show, in some manner, that the litigant's activities were numerous or abusive. See, e.g. _Wood,_ 705 F.2d 1515, 1523, 1526 (35 related complaints filed); _Oliver_, 682 F.2d at 444 (over 50 frivolous cases filed); _In re Green_, 669 F.2d 779, 781 (D.C.Cir. 1981) (per curiam) (over 600 complaints filed). Here, the district court's record fails to set forth in any form the filing of cases and motions that support the conclusion that _De Long's_ filings are so numerous or abusive that they should be enjoined. Therefore, we must remand on this basis as well." _De Long v. Hennessey_, 912 F.2d 1144, 1147–48 (9th Cir. 1990).

A dismissal without prejudice following a litigant's election not to amend after leave is granted is not evidence of vexatious conduct.

Nor does § 2.1   Case No. 2:22-cv-1281-LK   satisfy the substantive requirement that prior actions be frivolous or harassing. Molski holds that "[a]n injunction cannot issue merely upon a showing of litigiousness," and that claims must be "patently without merit." 500 F.3d 1047, 1059 (9th Cir. 2007). Judge King made no finding that the Fauci action was frivolous; to the contrary, the Court granted leave to amend and dismissed without prejudice only after Plaintiff elected not to proceed further.

Similarly, _Ringgold-Lockhart_ prohibits converting lawful procedural decisions into evidence of harassment or bad faith absent substantive findings. 761 F.3d 1057, 1062–63 (9th Cir. 2014). Plaintiff's decision not to amend conserved judicial resources and cannot be rebranded as abusive. "[C]ourts must 'be careful not to conclude that particular types of actions filed repetitiously are harassing,' and must '[i]nstead … discern whether the filing of several similar types of actions constitutes an intent to harass the defendant or the court.' " _Id_. at 1148 n.3 (quoting _In re Powell_, 851 F.2d 427, 431 (D.C. Cir. 1988)). _Ringgold-Lockhart v. County of Los Angeles,_ 761 F.3d 1057, 1063 (9th Cir. 2014).

"In Urban, this court was faced with a prolific pro se litigant who had filed sixteen complaints in the district court. Each complaint was dismissed by the district court as frivolous pursuant to 28 U.S.C. § 1915(d) (1982)." _In re Powell_, 851 F.2d 427, 429 (D.C. Cir. 1988).

For these reasons, the Court's reliance on _Benshoof et al. v. Fauci et al_. as part of a vexatious-litigant pattern rests on a mischaracterization of a dismissal without prejudice following voluntary abandonment and fails the "adequate record" and "substantive findings" requirements governing pre-filing restrictions.

## § 2.2 - Case No. 2:23-cv-751-RAJ

**Mischaracterization of Appellate Conduct Cannot Support a Vexatious-Litigant Finding.**

In describing _Benshoof v. Keenan et al_., Case No. 2:23-cv-751-RAJ, the Court states that after the Ninth Circuit issued an Order to Show Cause, "Benshoof failed to respond," and that the Ninth Circuit summarily affirmed the dismissal. Order  Dkt. 264 at 3.

That statement is factually incorrect. The Ninth Circuit docket reflects that Plaintiff did respond to the Order to Show Cause within the prescribed time [23-35418,  Dkt. No. 5 ]. The Ninth

Circuit then summarily affirmed after reviewing the district court record and the filed responses. The Order's assertion that Plaintiff "failed to respond" is therefore contrary to the appellate record [23-35418, Dkt. No. 8].

Equally important, the Ninth Circuit did not find the appeal frivolous. It stated only that the questions raised were "so insubstantial as not to require further argument." Order Dkt. 264 at 3. An "insubstantial" appeal is not a frivolous one, and Order Dkt. 264 does not state otherwise.

Using this appeal as evidence of vexatiousness thus rests on both a false factual premise and an improper inference of frivolousness. As _In re Powell_ explains, even where filings "suggest a litigious propensity," courts must conclude that they "fall far short of the level of abuse of process" required to justify an injunction, and "mere litigiousness alone does not support the issuance of an injunction." 851 F.2d at 430-31 (per curiam). An injunction is an "extreme sanction" that may be imposed "only in the most egregious cases," and "[o]n this record, such a case is not before us." Id.

Because Order 264 misstates Plaintiff's appellate conduct and treats a non-frivolous appeal as evidence of abuse, § 2.2 Case No. 2:23-cv-751-RAJ cannot support a vexatious-litigant designation.

### § 2.3 - Case No. 2:23-cv-01392-JNW

### Failure to State a Claim and TRO Denials Do Not Establish Vexatiousness.

In addressing this action, the Court states that it dismissed Plaintiff's First Amended Complaint with prejudice "because he failed to state a claim upon which relief could be granted," and that the pleadings were "long-winded" and failed to allege "cognizable legal theories or factual assertions that show[ed] a facially plausible claim for relief." Order 264 at 4-5. The Court also notes that it denied Plaintiff's fourth, fifth, and sixth motions for temporary restraining orders. Id.

Those findings do not establish frivolous, harassing, or abusive litigation. A dismissal for failure to state a claim - even with prejudice - does not equate to frivolousness absent an express finding that the claims were patently without merit. Order Dkt. 264 makes no such finding. Nor does the Order state that the TRO motions were frivolous or filed for an improper purpose.

Treating § 2.3 Case No. 2:23-cv-01392-JNW as evidence of vexatiousness thus rests on an impermissible conflation of unsuccessful litigation with abusive litigation. As the Ninth Circuit has made clear, "litigiousness alone is not enough," and courts must examine both the content of

filings and whether they are patently without merit before imposing a filing injunction. _Ringgold-Lockhart v. County of Los Angeles,_ 761 F.3d 1057, 1062 (9th Cir. 2014).

Because Order Dkt. 264 relies on a merits dismissal and TRO denials - without any finding of frivolousness or harassment - § 2.3 Case No. 2:23-cv-01392-JNW cannot support a vexatious-litigant designation.

### § 2.4 - Case No. 2:24-cv-343-TL

**Pending Case Cannot Support a Vexatious-Litigant Finding.**

In describing _Benshoof et al. v. City of Shoreline et al.,_ Case No. 2:24-cv-343-TL, the Court states that Plaintiff filed an amended complaint and that defendants moved to dismiss, noting that "[t]he motions to dismiss will be ripe for consideration in early March 2025." Order  Dkt. 264 at 5. That description confirms that § 2.4 Case No. 2:24-cv-343-TL was an active, undecided case at the time the vexatious-litigant order issued. No court had dismissed the action, and no finding of frivolousness, harassment, or abuse had been made.

Counting a pending case as evidence of vexatious litigation constitutes condemnation in advance of adjudication. As the Supreme Court has explained, "judgment ceases to be judicial if there is condemnation in advance of trial." _Escoe v. Zerbst,_ 295 U.S. 490, 494 (1935). Order 264 nevertheless treats § 2.4 Case No. 2:24-cv-343-TL as part of a vexatious pattern before any ruling on the merits.

This approach also fails the adequate-record requirement. Under _De Long_, a filing injunction must rest on accurate descriptions of prior dispositions and substantive findings. A case with pending motions - explicitly acknowledged by the Court - cannot be rebranded as abusive without findings regarding the content of the filings.

Because § 2.4 Case No. 2:24-cv-343-TL was live and undecided, its inclusion in Order  Dkt. 264 reflects prospective condemnation and record distortion. It cannot support a vexatious-litigant designation.

### § 2.5 - Case No. 2:24-cv-382-JNW

**Judicial-Immunity Dismissal Does Not Establish Vexatiousness**.

In describing _Benshoof v. Keenan_, Case No. 2:24-cv-382-JNW, the Court states that it dismissed the action "with prejudice based on judicial immunity." Order Dkt. 264 at 5.

1
2
3
4

A dismissal predicated on judicial immunity does not establish frivolous, harassing, or abusive litigation. Judicial immunity is a status-based legal bar that precludes relief regardless of a plaintiff's intent or the content of the filings. Order Dkt. 264 makes no finding that the claims were patently without merit, nor does it analyze the filings' substance.

5
6
7

Under Ninth Circuit law, a pre-filing injunction requires substantive findings that a litigant's actions are frivolous or harassing. *Ringgold-Lockhart v. County of Los Angeles*, 761 F.3d 1057, 1062-63 (9th Cir. 2014). Listing an immunity dismissal without content analysis fails that requirement and improperly conflates a threshold defense with vexatious conduct.

8
9

Because § 2.5 Case No. 2:24-cv-382-JNW rests solely on judicial immunity and lacks any finding of frivolousness or harassment, it cannot support a vexatious-litigant designation.

10
11
12

### § 2.6 - Case No. 2:24-cv-808-JHC

**Approved by Judge Chun on 02/11/2024. Pending, or Approved, Amendment Cannot Support a Vexatious-Litigant Finding.**

13
14
15

In describing *Benshoof v. Ferguson et al*., Case No. 2:24-cv-808-JHC, the Court states that Plaintiff moved for leave to file an amended complaint and that "[t]he motion remains pending." Order Dkt. 264 at 5.

16
17
18

That description confirms that § 2.6 Case No. 2:24-cv-808-JHC was an active case at the time the vexatious-litigant order issued. No dismissal had occurred, and the Court made no finding that the proposed amendment was frivolous, harassing, or abusive. To the contrary, the filing of a motion for leave to amend reflects routine procedural practice.

19
20
21

Counting a pending - or already approved - amendment as evidence of vexatious litigation constitutes condemnation in advance of adjudication. As the Supreme Court has cautioned, "judgment ceases to be judicial if there is condemnation in advance of trial." *Escoe v. Zerbst*, 295 U.S. 490, 494 (1935).

22
23
24
25

Under Ninth Circuit law, a pre-filing injunction must rest on accurate descriptions of prior dispositions and substantive findings regarding frivolousness or harassment. *Ringgold-Lockhart v. County of Los Angeles*, 761 F.3d 1057, 1062-63 (9th Cir. 2014). Treating a pending or approved amendment as evidence of abuse fails that standard and cannot support a vexatious-litigant designation.

26

## § 2.7 - Case No. 2:24-mc-43-JNW

### Unauthorized Third-Party Filing Cannot Support a Vexatious-Litigant Finding

In describing _In re: Kurt Benshoof,_ Case No. 2:24-mc-43-JNW, the Court states that a proposed habeas petition was filed "on behalf of Kurt Benshoof" by a third party and dismissed because the filer failed to establish the "next friend" relationship required to pursue habeas relief. Order 264 at 5.

That description confirms that the filing in § 2.7 Case No. 2:24-mc-43-JNW was not authorized and was not properly attributable to Plaintiff. The Court dismissed the matter because the filer lacked standing, not because the petition was frivolous or abusive. Order Dkt. 264 makes no finding that Plaintiff engaged in any improper conduct in connection with this case.

Counting an unauthorized third-party filing as evidence of Plaintiff's vexatiousness mischaracterizes the record. Under _De Long_, a pre-filing injunction must rest on an adequate record accurately describing the litigant's own actions. 912 F.2d at 1147–48. Treating a filing the Court itself disclaimed as unauthorized as part of a vexatious pattern fails that requirement.

Because § 2.7 Case No. 2:24-mc-43-JNW involves a third-party filing dismissed for lack of standing, it cannot support a vexatious-litigant designation.

## § 2.8 - Case No. 2:24-cv-1110-JNW

### Procedural Habeas Dismissal Cannot Support a Vexatious-Litigant Finding

In describing _Benshoof v. Warden_, Case No. 2:24-cv-1110-JNW, the Court states that Plaintiff's habeas petition was dismissed on procedural grounds due to Younger abstention and failure to exhaust state court remedies. Order Dkt. 264 at 5-6.

Those grounds do not establish frivolous, harassing, or abusive litigation. Dismissal under _Younger_ reflects respect for ongoing state proceedings, and dismissal for failure to exhaust reflects sequencing requirements inherent in habeas practice. Order Dkt. 264 does not state that the petition was frivolous, nor does it analyze the content of the filing as patently without merit.

Under Ninth Circuit law, a pre-filing injunction must rest on substantive findings of frivolousness or harassment. _Ringgold-Lockhart v. County of Los Angeles_, 761 F.3d 1057, 1062–63 (9th Cir. 2014). Treating a procedurally dismissed habeas petition as evidence of vexatiousness fails that standard.

Because § 2.8 Case No. 2:24-cv-1110-JNW rests solely on abstention and exhaustion grounds and lacks any finding of abuse, it cannot support a vexatious-litigant designation.

## § 2.9 - Case No. 2:24-mc-57-JNW

### Fee-Based Procedural Dismissal Does Not Establish Vexatiousness

In describing *City of Seattle v. Benshoof*, Case No. 2:24-mc-57-JNW, the Court states that Plaintiff attempted to remove his state criminal cases and that the matter was dismissed because Plaintiff "failed to pay the filing fee or move for leave to proceed IFP." Order Dkt. 264 at 6.

A dismissal based on failure to pay a filing fee or seek IFP status does not establish frivolous, harassing, or abusive litigation. It reflects only that a procedural prerequisite to adjudication was not met. Order Dkt. 264 makes no finding regarding the substance of the attempted removal and does not state that the filing was frivolous or made for an improper purpose.

Under Ninth Circuit law, a pre-filing injunction must rest on substantive findings of frivolousness or harassment. *Ringgold-Lockhart v. County of Los Angeles*, 761 F.3d 1057, 1062–63 (9th Cir. 2014). Treating a fee-based procedural dismissal as evidence of vexatiousness fails that requirement.

Because § 2.9 Case No. 2:24-mc-57-JNW rests solely on a filing-fee deficiency and lacks any finding of abuse, it cannot support a vexatious-litigant designation.

## § 2.10 - Case No. 2:24-mc-60-JNW

### Jurisdictional Dismissal Does Not Establish Vexatiousness

In describing *State of Washington v. Benshoof*, Case No. 2:24-mc-60-JNW, the Court states that Plaintiff attempted to remove his state criminal cases under 28 U.S.C. § 1443 and that the Court dismissed the matter for lack of jurisdiction because the statutory requirements for removal were not met. Order Dkt. 264 at 6.

A dismissal for lack of jurisdiction does not establish frivolous, harassing, or abusive litigation. It reflects only that the federal court lacks authority to adjudicate the matter. Order 264 makes no finding that the removal attempt was frivolous or filed for an improper purpose.

Under Ninth Circuit law, a pre-filing injunction must rest on substantive findings that a litigant's actions are frivolous or harassing. *Ringgold-Lockhart v. County of Los Angeles*, 761 F.3d

1057, 1062-63 (9th Cir. 2014). Treating a jurisdictional dismissal as evidence of vexatiousness fails that requirement.

Because § 2.10 Case No. 2:24-mc-60-JNW rests solely on a jurisdictional defect and lacks any finding of abuse, it cannot support a vexatious-litigant designation.

February 10, 2026.  Respectfully Submitted by:

Kurt Benshoof, Plaintiff
Washington Department of Corrections,
Coyote Ridge Corrections Center (CRCC)
DOC# 448305, Unit FB01,
PO Box 769, Connell, WA 99326

The foregoing statements of fact were typed up by the undersigned, upon Mr. Benshoof's request and to the best of the undersigned's understanding.[1]

Urve Maggitti
1131 Westhaven Boulevard
Franklin, TN 37064
urve.maggitti@gmail.com

---

[1] See *Faretta v. California* and Section 35 of the **Judiciary Act of 1789, 1 Stat. 73, 92**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Hon. Jamal Whitehead

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KURT BENSHOOF,

                                    Plaintiff,

            v.

MOSHE ADMON, et al.,

                                    Defendants

No.: 2:23-cv-01392-JNW

# Exhibit D:

### JUDICIAL KNOWLEDGE TIMELINE
### (JULY 2024 – FEBRUARY 11, 2025)

This Exhibit identifies:

Part 1: motion for vexatious litigant order was filed after July 3, 2024, arrest.

Part 2: custody-related and access-to-court notices that were presented to, acknowledged by, or appeared on the docket before District Judge Jamal N. Whitehead prior to entry of the February 11, 2025 vexatious-litigant order.

## PART 1

### Facts: *Case No. 2:23-cv-01392-JNW*

**1. July 3, 2024**

Kurt Benshoof is arrested at his home.

**2. July 16, 2024.**

<u>Dkt. no. 250:</u>   "MOTION Vexatious Litigant Order Against Plaintiff Kurt A. Benshoof , filed by Defendants Faye Chess, City of Seattle, Benjamin Coomer, Anita Crawford-Willis, Ann Davidson, Jenny Durkan, Adam Eisenberg, Willie Gregory, Gabriel Ladd, Matthew Lentz, Mary Lynch, Katrina Outland, Jerome Roache, Soheila Sarrafan, David Sullivan, Jordan Wallace. (Attachments: # 1 Proposed Order) Noting Date 8/9/2024, (LePierre, Dallas) (Entered: 07/16/2024)"

**3. July 23, 2024.**

<u>Dkt. no. 254:</u>   "NOTICE of Joinder JOINING 250 MOTION Vexatious Litigant Order Against Plaintiff Kurt A. Benshoof , by Defendant Nathan Cliber. (Turner, Sarah) (Entered: 07/23/2024)"

**4. July 24, 2024.**

<u>Dkt. no. 255:</u>   "NOTICE of Joinder JOINING 250 MOTION Vexatious Litigant Order Against Plaintiff Kurt A. Benshoof , by Defendants David Keenan, King County. (Wu, Peggy) (Entered: 07/24/2024)"

**5. July 25, 2024.**

<u>Dkt. no. 256:</u>   "NOTICE of Joinder JOINING 250 MOTION Vexatious Litigant Order Against Plaintiff Kurt A. Benshoof , by Defendant Blair Russ. (Russ, Blair) (Entered: 07/25/2024)"

## **PART 2**

**1. July 14, 2024**

***Case No. 2:24-mc-00043-JNW  -  Dkt. No. 1 at pp. 2, 4-5***

A habeas petition filed by a purported next friend alleged that Kurt Benshoof was incarcerated at King County Correctional Facility and alleged denial of basic materials to prepare filings.

**2. July 17, 2024**

*Case No. 2:24-mc-00043-JNW  -  Dkt. No. 6 at pp. 1-2*

A Ninth Circuit transfer order filed in the district-court record stated that Benshoof was a Washington state pretrial detainee and directed service c/o King County Correctional Facility.

**3. July 17, 2024**

*Case No. 2:24-cv-01110-JNW  -  Dkt. No. 1 at p. 1*

Filed AFTER City Defendants filed "MOTION Vexatious Litigant Order Against Plaintiff Kurt A. Benshoof" Dkt. No. 250 on  07/16/2024.

A proposed habeas petition was filed on Benshoof's behalf, placing a custody-based habeas matter on the docket.

**4. July 26, 2024**

*Case No. 2:24-cv-01110-JNW  -  Dkt. No. 4 at p. 1*

A habeas petition was filed on Benshoof's behalf, continuing the custody-based posture of the case.

**5. July 29, 2024**

*Case No. 2:24-cv-01110-JNW  -  Dkt. No. 5 at p. 1*

A minute order transferred the case to Judge Jamal N. Whitehead as related, placing the custody-based habeas docket directly before him.

**6. July 24, 2024 and August 11, 2024**

*Case No. 2:24-mc-00043-JNW  -  Dkt. Nos. 7 at pp. 3-4; 9 at pp. 2-3*

Subsequent filings reiterated allegations that Benshoof lacked access to pen, paper, and related tools while incarcerated.

**7. August 6, 2024**

*Case No. 2:24-cv-01110-JNW  -  Dkt. No. 7 at pp. 1-3*

Benshoof filed a **handwritten** habeas petition, placing first-person assertions of incarceration and access limitations before the Court.

**8. August 6, 2024**

*Case No. 2:24-cv-01110-JNW  -  Dkt. No. 8 at pp. 1-2*

Benshoof filed a **handwritten** notice refusing a magistrate judge, containing specific assertions regarding denial of envelopes, stamps, paper, and related items.

**9. August 21, 2024**

*Case No. 2:24-cv-01110-JNW  -  Dkt. No. 11 at p. 1*

Benshoof filed a **handwritten** notice of change of address updating his address to King County Correctional Facility in Kent, Washington.

**10. August 30, 2024**

*Case No. 2:24-mc-00043-JNW  -  Dkt. No. 10 at pp. 1, 3*

Judge Whitehead issued an order of dismissal acknowledging that filings alleged Benshoof was detained at King County Correctional Facility and alleged denial of basic materials, and stating that the Court did not determine the access issue because the petition was dismissed for lack of next-friend standing and jurisdiction.

**11. August 30, 2024**

*Case No. 2:24-cv-01110-JNW  -  Dkt. No. 12 at pp. 1-4*

Benshoof filed a handwritten, sworn affidavit and memorandum asserting current incarceration at the Maleng Regional Justice Center and describing lack of access to legal materials and interference with mail.

**12. September 9, 2024**

*Case No. 2:24-mc-00057-JNW  -  Dkt. No. 1 at pp. 8-9*

NB: Filed AFTER City Defendants filed "MOTION Vexatious Litigant Order Against Plaintiff Kurt A. Benshoof" Dkt. No. 250 on  07/16/2024.

Benshoof filed a handwritten proposed notice of removal stating incarceration since July 3, 2024 and asserting denial of litigation materials, including ink pen and envelopes.

**13. September 11, 2024**

*Case No. 2:24-cv-01110-JNW  -  Dkt. No. 14 at pp. 1-3*

Benshoof filed a handwritten notice describing threats during ongoing imprisonment, transfer between facilities, and loss of materials.

**14. September 18, 2024**

*Case No. 2:24-mc-00057-JNW  -  Dkt. No. 3 at p. 1*

The Clerk issued a filing-deficiency notice requiring corrective action, mailed to Benshoof during the period in which the docket reflected a jail address.

**15. September 24, 2024**

*Case No. 2:24-mc-00060-JNW  -  Dkt. No. 1 at pp. 1-3; Docket Header at p. 1*

Filed AFTER City Defendants filed "MOTION Vexatious Litigant Order Against Plaintiff Kurt A. Benshoof" Dkt. No. 250 on  07/16/2024.

    Benshoof, via third party assistance, filed a proposed notice of removal asserting incarceration since July 3, 2024 and alleging denial of basic litigation tools; the docket header reflected King County Jail.

**16. October 2, 2024**

*Case No. 2:23-cv-01392-JNW  -  Dkt. No. 257 at pp. 1, 7*

Benshoof , via third party assistance, filed an emergency request to stay stating he was currently incarcerated at King County Correctional Facility, with a disclosure of no internet or email access.

**17. October 8, 2024**

*Case No. 2:23-cv-01392-JNW  -  Dkt. No. 261 at pp. 1, 11*

Benshoof, via third party assistance, filed a response opposing the vexatious-litigant motion supplement, containing a disclosed third-party typing statement while signed by Benshoof.

**18. January 8, 2025**

*Case No. 2:24-mc-00057-JNW  -  Dkt. Nos. 4 at pp. 1-2; 5 at p. 1*

Judge Whitehead dismissed the action without prejudice for failure to pay the filing fee or apply for IFP status, without adjudicating custody or access issues.

**19. January 16, 2025**

*Case No. 2:24-mc-00060-JNW  -  Dkt. No. 16 at pp. 1-2*

Judge Whitehead remanded the case to state court and terminated pending motions on jurisdictional grounds, without adjudicating custody or access issues.

**20. January 17, 2025**

*Case No. 2:24-cv-01110-JNW  -  Dkt. Nos. 28 at pp. 1-2; 29 at p. 1*

Judge Whitehead issued an order and judgment dismissing the federal habeas petition, stating that Benshoof was confined at King County Correctional Facility and released on bail on November 27, 2024.

**21. January 28, 2025**

*Case No. 2:24-mc-00057-JNW  -  Dkt. No. 6 at pp. 1-4*

The docket reflects mail addressed to Benshoof returned as undeliverable with respect to the dismissal order and judgment.

**22. February 3, 2025**

*Case No. 2:24-cv-01110-JNW  -  Dkt. No. 33 at pp. 1-3*

Judge Whitehead denied a certificate of appealability.

**23. February 11, 2025**

*Case No. 2:23-cv-01392-JNW  -  Dkt. No. 264 at pp. 10-11*

Judge Whitehead entered the vexatious-litigant order, which includes language equating the existence of filings since arrest with access to the Court.

February 10, 2026.  Respectfully Submitted by:

Kurt Benshoof, Plaintiff
Washington Department of Corrections,
Coyote Ridge Corrections Center (CRCC)
DOC# 448305, Unit FB01,
PO Box 769, Connell, WA 99326

The foregoing statements of fact were typed up by the undersigned, upon Mr. Benshoof's request and to the best of the undersigned's understanding.[1]

Urve Maggitti
1131 Westhaven Boulevard
Franklin, TN 37064
urve.maggitti@gmail.com

---

[1] See *Faretta v. California* and Section 35 of the **Judiciary Act of 1789, 1 Stat. 73, 92**

Hon. Jamal Whitehead

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KURT BENSHOOF,

Plaintiff,

v.

MOSHE ADMON, et al.,

Defendants

**No.: 2:23-cv-01392-JNW**

# EXHIBIT E:

### <u>PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE</u>
### <u>OF COURT RECORDS</u>

Pursuant to Federal Rule of Evidence 201, Plaintiff Kurt A. Benshoof respectfully requests that the Court take judicial notice of the existence, filing dates, and contents of certain filings and orders in related cases assigned to District Judge Jamal N. Whitehead, as identified below.

Judicial notice is requested solely for the fact that these filings and orders exist, were filed on the stated dates, and contain the statements reflected in the Court's own records. Plaintiff does not request judicial notice of the truth of any disputed factual assertions contained within those filings.

## I. LEGAL STANDARD

Federal Rule of Evidence 201 permits a court to take judicial notice of facts that are not subject to reasonable dispute because they:

1. Are generally known within the court's territorial jurisdiction; or

2. Can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

Courts may take judicial notice of court records and filings, including docket sheets and judicial orders. See *Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

## II. MATERIALS FOR WHICH JUDICIAL NOTICE IS REQUESTED

Plaintiff requests judicial notice of the following public court records, all of which are filings or orders entered on the dockets of cases assigned to Judge Jamal N. Whitehead:

**A. Case No. 2:24-mc-00043-JNW**

1. Dkt. No. 1 - Writ of Habeas Corpus as Next Friend (filed July 14, 2024)

2. Dkt. No. 6 - Ninth Circuit Transfer Order (filed July 17, 2024)

3. Dkt. No. 7 - Motion for Judicial Notice (filed July 24, 2024)

4. Dkt. No. 9 - Motion for Judicial Notice (filed August 11, 2024)

5. Dkt. No. 10 - Order of Dismissal (entered August 30, 2024)

**B. Case No. 2:24-cv-01110-JNW**

6. Dkt. Nos. 1, 4 - Habeas Petitions (filed July 17 and July 26, 2024)

7. Dkt. No. 5 - Minute Order Transferring Case to Judge Whitehead (entered July 29, 2024)

8. Dkt. Nos. 7, 8, 11, 12, 14 - Handwritten filings by Kurt Benshoof (filed August–September 2024)

9. Dkt. No. 28 - Order Dismissing Habeas Petition (entered January 17, 2025)

10. Dkt. No. 29 - Judgment (entered January 17, 2025)

11. Dkt. No. 33 - Order Denying Certificate of Appealability (entered February 3, 2025)

**C. Case No. 2:24-mc-00057-JNW**

12. Dkt. No. 1 - Proposed Notice of Removal (filed September 9, 2024)

13. Dkt. No. 3 - Notice of Filing Deficiency (entered September 18, 2024)

14. Dkt. Nos. 4, 5 - Dismissal Order and Judgment (entered January 8, 2025)

15. Dkt. No. 6 - Returned Mail as Undeliverable (entered January 31, 2025)

**D. Case No. 2:24-mc-00060-JNW**

16. Dkt. No. 1 -  Proposed Notice of Removal (filed September 24, 2024)

17. Dkt. No. 16 - Order Remanding Case to State Court (entered January 16, 2025)


### III. PURPOSE AND LIMITATION OF REQUEST

Judicial notice is requested only to establish:

    (1) The existence of the above filings and orders;

    (2) Their filing and entry dates; and

    (3) The fact that these materials were before Judge Whitehead prior to the entry of the February 11, 2025 vexatious-litigant order in this case.


Plaintiff does not request judicial notice of:

    (i)  The truth of any disputed factual assertions within the filings;

    (ii)  The correctness of any prior rulings; or

    (iii) Any matters outside the face of the court records.


### IV. CONCLUSION

Because the materials identified above are public court records whose existence and contents are not subject to reasonable dispute, Plaintiff respectfully requests that the Court take judicial notice of them for the limited purposes stated.


February 10, 2026.  Respectfully Submitted by:

Kurt Benshoof, Plaintiff
Washington Department of Corrections,
Coyote Ridge Corrections Center (CRCC)
DOC# 448305, Unit FB01,

PO Box 769, Connell, WA 99326

The foregoing statements of fact were typed up by the undersigned, upon Mr. Benshoof's request and to the best of the undersigned's understanding.[1]

Urve Maggitti
1131 Westhaven Boulevard
Franklin, TN 37064
urve.maggitti@gmail.com

---

[1] See *Faretta v. California* and Section 35 of the **Judiciary Act of 1789, 1 Stat. 73, 92**

## CERTIFICATE OF SERVICE

Plaintiff hereby certifies that the foregoing motion will be sent to all counsel of record, to the email addresses listed below.

**Attorneys For Defendant**
**CITY OF SEATTLE:**
Dallas LePierre, WSBA #47391
Catherine Riedo, WSBA #50418
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
Email: dallas.lepierre@seattle.gov
Phone: (206) 386-1041
Email: catherine.riedo@seattle.gov
Phone: (206) 684-8200

**Defendant AMY FRANKLIN-BIHARY:**
Amy Franklin-Bihary, *pro se* WSBA#35787
701 Fifth Avenue
Suite 4550
Seattle, WA 98104
Phone: (206) 624-4900
Email: afb@wechslerbecker.com

**Attorneys for Defendant**
**NATHAN CLIBER:**
Sarah N. Turner, WSBA #37748
Email: sturner@grsm.com
Michael C. Tracy, WSBA #51226
Email: mtracy@grsm.com
701 Fifth Avenue, Suite 2100
Seattle, WA 98104
Phone: (206) 695-5178

**Defendant Blair Russ:**
Blair M. Russ, WSBA #40374
1000 Second Avenue
Suite 3660
Seattle, WA 98104
Email: bmr@tbr-law.com
Phone: (206) 621-1871

**Attorneys for Defendants**
**PUGET CONSUMERS CO-OP, Freya Brier,**
**Zachary Cook:**

Darren A. Feider, WSBA #22430
Email: dfeider@sbjlaw.com
Matthew Coughlan, WSBA #56583
Email: mcoughlan@sbjlaw.com
15375 SE 30th Place
Suite 310
Bellevue, WA 98007

**Defendant Moshe Admon:**
Moshe Y. Admon, WSBA #50325
300 Lenora Street
Suite 4008
Seattle, WA 98121
Email: jeff@admonlaw.com
Phone: (206) 739-8383

**Attorneys for Defendants**
**BIG 5 and SPROUTS:**
James Yand, WSBA #18730
Email: james.yand@millernash.com
James Johnson, WSBA #45750
Email: james.johnson@millernash.com
605 Fifth Avenue S, Suite 900
Seattle, WA 98104
Phone: (206) 624-8300

**Attorney for Defendants**
**David Keenan, KING COUNTY:**
Peggy Wu, WSBA #35941
Email: pwu@kingcounty.gov
Phone: (206) 477-1120
701 Fifth Avenue, Suite 600
Seattle, WA 98104

**Defendant Magalie Lerman:**
Magalie E. Lerman
849 NE 130th Street
Seattle, WA 98125
Email: magalie.lerman@gmail.com
Phone: (303) 500-9723

**Attorney for Defendant**
**Seattle Public Schools:**
Sarah S. Mack, WSBA #32853
1191 Second Avenue, Suite 2000
Seattle, WA 98101

Phone: (206) 245-1700
Email: sarah.mack@pacificalawgroup.com

**Attorneys for Defendant**
**CENTRAL COOP:**
Darren A. Feider, WSBA #22430
Email: dfeider@sbj.law
Matthew Coughlan, WSBA #56583
Email: mcoughlan@sbj.law
15375 SE 30th Place
Suite 310
Bellevue, WA 98007

**Defendant Jessica Owen:**
Jessica R. Owen
849 NE 130th Street
Seattle, WA 98125
Email: ms.jadelicious@gmail.com
Phone: (206) 427-6170

Hon. Jamal Whitehead

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KURT BENSHOOF,

Plaintiff,

v.

MOSHE ADMON, et al.,

Defendants

No.: 2:23-cv-01392-JNW

EXHIBIT F

## Declaration of Kurt A. Benshoof

1. My name is Kurt Benshoof. I am 56-years old and competent to testify.

2. Between September, 2022 and July 16, 2024, I filed seven civil actions in US District Court for the Western District of Washington, one of which was a counterclaim in  case No. 2:23-cv-1829-JNW.

3. All seven actions were filed in good faith, substantiated by admissible evidence, and sworn affidavits.

4. All seven actions were brought with my sincere belief in their likelihood of success upon the merits.

5. All seven actions were composed with the understanding that pro se complaints are to be liberally construed to affect justice and are to be held to a less stringent standard than those drafted by licensed attorneys.

6. On July 3rd, 2024, Seattle police incarcerated me in King County Jail located at 500 5th Avenue, Seattle, Washington 98104, where I was held in a holding tank from July 3, 2024 until on  or around August 15, 2024.

7. From July 3, 2024, to August 13, 2024, while in the holding tank, I [Benshoof] was denied access to paper, envelopes, postage and access to the law library.

8. July 3rd, 2024, SPD seized both of my [Benshoof's] computers and both of my cell phones. To date, SPD has not returned my [Benshoof's] computers or phones.

9. On or around July 16, 2024, the City Defendants filed its vexatious litigant motion.

10. On or around July 18, 2024, I received a copy of the City's vexatious motion Dkt. No. 250, and it was my understanding at that time, the filing and service of the response would be due by August 6, 2024, pursuant to LCR 7 (d) (4) and LCR7 (d) (7).

11. On or around August 5th, 2024, I handed my handwritten habeas petition to my friend Molly Anderson in an open court hearing.

12. On August 6, 2024, Molly Anderson went to the Western District of Washington federal courthouse and filed it, since I was being denied paper, envelopes, postage - since I was being denied access to the mail.

13. On or around August 13th, 2024, I was provided with a pro se package of, of materials which included printer paper, six letter size envelopes, 3 manila envelopes, and pro se instructions. The instructions stipulated that no more than 6-pieces of paper would be allowed in a letter size envelope and no more than 12-pages would be allowed in a manila envelope.

**Denied Pro Se Equipment**

14. According to the County's Inmate Handbook, I [Benshoof] could use the pro se computer and printer two days per week. Between July 3, 2024, and August 13, 2024, I [Benshoof] was denied access to the pro se workstations in the King County Jail. (Ex. #0491-0493; #0496)[1]

15. On or about August 14, 2024, DAJD provided Benshoof a one-time supply of 500 sheets of printing paper and several envelopes.

16. On August 14, 2024, I [Benshoof] was transferred from the King County Jail to the Regional Justice Center ("RJC") in Kent, Washington. The RJC had two pro se workstations. One pro se workstation was located in E-Unit and one was located in H-Unit. I [Benshoof] attempted to use the pro se computer and printer at the RJC.

---

[1] **The cited exhibits (e.g., [Ex. #0235]) refer to my [Benshoof's] FAC in 2:24-cv-00808-JHC (Dkt. #69).**

17. Both RJC unit's computers froze every time I [Benshoof] attempted to print copies of the Washington State Constitution. When I [Benshoof] was finally successful in printing the twelve pages of <u>*Groh v. Ramirez*</u>, 540 U.S. 551 (2004), the printer ran out of ink and jail personnel would not provide me [Benshoof] with a replacement ink cartridge.

18. On September 4, 2024, I [Benshoof] spoke directly to the woman in charge of pro se supplies at the RJC. I [Benshoof] attempted to purchase more printer paper and envelopes to litigate more than twenty (20) ongoing state and federal court cases. The woman denied my [Benshoof's] request, claiming that I [Benshoof's] request was "unreasonable." (Ex. #0489)

19. After I [Benshoof ] was transferred back to King County Jail from the RJC on September 6, 2024, I [Benshoof] again attempted to use the pro se workstations. Because inmates had stolen my [Benshoof's] remaining pages of printer paper, and because DAJD personnel repeatedly denied my [Benshoof's] attempts to purchase more printer paper (Ex. #0487), I [Benshoof ] could not print any document for any of my City, state, or federal court cases.

20. On September 6, 2024, inmates stole my [Benshoof's] printing paper, pencils, eraser, reading glasses, and legal documents. Jail personnel refused to retrieve my [Benshoof's] stolen property and moved  me [Benshoof] to a higher security unit. (Ex. #0483; #0488)

21. On September 14, 2024, inmates, including Cameron Buchanan, stole my [Benshoof's ] papers and effects, including phone numbers of my [Benshoof's] assistants of counsel. Buchanan also stole the copy of Washington Pattern Jury Instructions which I [Benshoof] had obtained from DAJD for use at trial. DAJD personnel again refused to retrieve my [Benshoof's] stolen property. (Ex. #0485)

**ADA Violations**

22. I [Benshoof] repeatedly requested ADA accommodations related to my bi-lateral carpal tunnel syndrome. Upon my [Benshoof's] oral motion, Seattle Municipal Court Judge Andrea Chin issued an Order ("ADA Order") on September 3, 2024, stated, "Defendant, who is representing himself, shall be granted a reasonable access to the RJC law room, a working computer and printer & paper (or a typewriter & paper), for research and brief writing. Defendant shall have reasonable access to all pro se materials including current WPIC. Defendant shall have access to digital discovery with regard to the above cases. Defendant shall also be allowed to purchase envelopes with postage." Outland signed the Order, as well as Judge Andrea Chin. (Ex. #0497)

23. Pascal Herzer ("Herzer"), DAJD attorney, moved for a hearing before Judge Chin on September 9, 2024. At the hearing Herzer admitted that DAJD had previously granted an inmate's ADA request to provide a computer with word processing software so that an inmate could type and print their court pleadings. Despite this admission, Herzer claimed that it was unreasonable for DAJD to comply with Chin's order to accommodate me [Benshoof] with the same.

24. Judge Chin then claimed that she did not have the legal authority to order DAJD to provide me [Benshoof] with paper, envelopes, postage, a typewriter, or a computer with word processing software, nor a printer with an ink cartridge.

25. On November 13, 2024, DAJD supervisor Gregg Curtis ("Curtis") stated in his sworn declaration that "Every KCCF resident is provided a copy of the Inmate Handbook, which provides information about jail rules and privileges." (Ex. #0511)

26. During nearly five months in jail, I [Benshoof] only met one inmate who had been provided a copy of the Inmate Handbook. I [Benshoof] was not provided an Inmate Handbook for the first three weeks of imprisonment and was only provided one after submitting a kite request for an Inmate Handbook.

27. Curtis averred that "All KCCF residents have the ability to send and receive mail." Curtis also averred that "Indigent inmates are provided a packet that contains three postage-paid envelopes, three pencils, and three sheets of paper."

28. I [Benshoof] was an indigent inmate upon arriving at King County Jail on July 3, 2024. I [Benshoof] was not provided any sheets of paper or envelopes until August 13, 2024, and then only because I was a pro se defendant. After arriving at KCCF on September 6, 2024, DAJD refused to provide me [Benshoof] any envelopes or sheets of paper, despite my [Benshoof's] repeated kite requests and sufficient donated inmate funds in my account.

29. Curtis averred that "Residents who are pro se…are provided a one-time provision of supplies free of charge. If more supplies are needed, residents may purchase them through the commissary. KCCF has placed no restrictions on Benshoof's right to be issued pro se supplies or his ability to purchase additional supplies" (Ex. #0513)

30. Printer paper is not listed for sale from the commissary. Between August and November 2024, I [Benshoof] repeatedly called Curtis and Herzer, leaving voicemail messages to inform them that I [Benshoof] was being denied access to envelopes, postage and printer paper. Curtis

and Herzer never responded to my [Benshoof] and I [Benshoof] was unable to ever purchase printer paper during my nearly five months of jail incarceration.

**Denied Telephone Access**

31. Curtis averred that "All KCCF residents have access to telephones located in dayrooms during the hours they are out of their cells. KCCF has placed no restrictions on Benshoof's ability to use the telephone in the dayroom to make calls."

32. The reason DAJD transferred  me [Benshoof ] to solitary confinement in the East Wing of the 11th floor was because I [Benshoof] used the telephone to call 911 to report felony crimes as a victim witness to the SPD. On November 22, 2024, DAJD personnel cut off all access to the telephone and informed  me [Benshoof] that I wouldn't be released on bail until 2025 because "there is a six week wait list for EHD" ankle monitors. (Ex. #0495)

**Denied Ability to Mail Court Documents**

33. By denying my [Benshoof's] kite requests, denying my reasonable accommodation requests, denying my attempts to purchase printer paper and mailing supplies, I [Benshoof] was denied the ability to file documents in more than twenty (20)  state and federal court cases for most of my five months of imprisonment.

34. November 9th, 2024, I [Benshoof] was transferred to solitary confinement without access to paper, envelopes or postage.

35. On or around November 23, 2024, King County Jail personnel denied me [Benshoof] telephone access.

36. On November 27, 2024, I [Benshoof] was transferred to community custody on two GPS ankle monitors and prohibited from being within 1000-feet of his own home, denying me [Benshoof] access to my own legal documents and research materials .

37. On February 11, 2025, US District Court Judge John H. Chun approved my [Benshoof's] first amended complaint in WAWD Number 2:24-cv-00808m Dkt. No. 69 without noting any objections or corrections to the 255-page complaint.

38. Later that day, on February 11, 2025, Judge Jamal Whitehead granted the city's motion [Dkt. No. 250] for a vexatious litigant order against me [Dkt. No. 264].

39. On February 24, 2025, the city remanded me [Benshoof] to County Jail despite three

months of of strict compliance with all community custody conditions. Then I was immediately placed in solitary confinement on February 24, 2025 without any access to paper envelopes, postage, or the law library.

40. I [Benshoof] remained in solitary confinement, on the 11th floor of King County Jail in Seattle, Washington from February 24, 2025 until May 6th, 2025.

## VERIFICATION

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

February 10, 2026.   Respectfully Submitted,

Kurt Benshoof, Plaintiff
Washington Department of Corrections,
Coyote Ridge Corrections Center (CRCC)
DOC# 448305, Unit FB01,
PO Box 769, Connell, WA 99326

The foregoing statements of fact were typed up by the undersigned, upon Mr. Benshoof's based on Mr. Benshoof's dictated statements and factual representations. [2]

Urve Maggitti
1131 Westhaven Boulevard
Franklin, TN 37064
urve.maggitti@gmail.com

---

[2] See *Faretta v. California* and Section 35 of the **Judiciary Act of 1789, 1 Stat. 73, 92**